[No. D060817. Fourth Dist., Div. One. Mar. 20, 2013.]

In re ROBERT VILLA on Habeas Corpus.

COUNSEL

Stephen M. Hinkle, under appointment by the Court of Appeal, for Petitioner Robert Villa.

Kamala D. Harris, Attorney General, Jennifer A. Neill, Assistant Attorney General, Phillip Lindsay and Gregory J. Marcot, Deputy Attorneys General, for Respondent the People.

OPINION

HUFFMAN, Acting P. J.—Robert Villa filed a petition for writ of habeas corpus to challenge his validation as an associate of the Mexican Mafia prison gang and his placement in the administrative segregation union (ASU) at Centinela State Prison and later, California Correctional Institution in Tehachapi. Villa argues that his possession of a validated Mexican Mafia associate's chronos was permitted by California Code of Regulations, title 15, section 3163[1] and could not serve as a source item to validate him as an associate of the Mexican Mafia under section 3378. In addition, he contends a confidential memorandum, which does not connect him with a specific validated gang member or associate, is insufficient to establish a "direct link to a current or former validated member or associate of the gang" as required by section 3378, subdivision (c)(4).

In a published opinion filed September 27, 2012, we agreed with both of Villa's contentions and granted relief. On its own motion, the Supreme Court ordered review[2] and transferred the matter to this court with directions to vacate our decision and reconsider the case in light of *In re Cabrera* (2012) 55 Cal.4th 683 [148 Cal.Rptr.3d 500, 287 P.3d 72] (*Cabrera*).) We have complied with the Supreme Court's direction and now grant the requested relief.

FACTUAL AND PROCEDURAL HISTORY

Villa has been incarcerated with California's Department of Corrections and Rehabilitation (CDCR) since 2005. In February 2009, Villa was moved to Centinela's ASU pending an investigation into his involvement with the Mexican Mafia prison gang.

---

[1] All further section references are to title 15 of the California Code of Regulations.

[2] Review was granted on January 3, 2013, S206820.

On March 30, 2010, the institution gang investigations unit (IGI) concluded its investigation of Villa's gang status. Per section 3378, the IGI found there was sufficient evidence to validate Villa as an associate of the Mexican Mafia prison gang. The IGI validated Villa's gang association with four source items.

The first source item is a greeting card with a drawing made by another validated gang member that was found in Villa's possession. "The front of the greeting card display[s] a drawing of Aztec art work and on the bottom right corner of the drawing was signed by 'GARCIA'. The back of the greeting [card] displays another drawing which is signed, 'FERMIN' on the bottom right corner. Under the drawing are the words, (Arte By: Fermin Garcia ©)." Fermin Garcia has been validated as an associate of the Mexican Mafia and is currently housed in Pelican Bay State Prison. In reviewing the first source, the investigator noted that Villa's possession of the "greeting card in his personal property is indicative to Villa's association with the [Mexican Mafia]."

The second source item is a sketch that was found in Villa's possession bearing the Matlactlomei symbol, which is a symbol commonly used to indicate a person's allegiance with and/or loyalty to the Mexican Mafia. In reviewing the second source item, the investigator stated: "It is not reasonable to believe that Villa would maintain these symbols in his personal property without knowing the meaning and significance of these symbols. Possession of this sketch indicates. that he associates with the symbol, and those individuals who associate with it."

The third source item consists of three CDCR form 128-B[3] validation chronos belonging to inmate Alton Encalade. Encalade previously was validated as an active associate of the Mexican Mafia. The investigator commented, "It is not reasonable to believe Villa would be in possession of material belonging to a Validated Associate of the [Mexican Mafia] gang and not be active with the .[Mexican Mafia] gang. Villa's actions of maintaining this information about this inmate shows a close personal tie with Encalade who is a validated associate of the [Mexican Mafia] prison gang."

The fourth source item is a confidential memorandum. The memorandum explains that an inmate identified Villa as having a position on the "Mesa" of the Mexican Mafia. "Mesa" is Spanish for "table," which means, in the

---

[3] A CDCR form 128-B is used to document information about inmates and inmate behavior. Such information may include, but is not limited to, documentation of enemies, records of disciplinary or classification matters, pay reductions or inability to satisfactorily perform a job, refusal to comply with grooming standards, removal from a program, and records of parole or social service matters. (§ 3000.)

context of a prison gang, a governing body of influential inmates who have volunteered and agreed to enforce and direct gang activities within the prison for the benefit of the Mexican Mafia.

Villa was provided with all information used as sources in the validation process, except for the confidential memorandum. Instead, he was provided the confidential information via a CDCR form 1030, a confidential information disclosure form. The confidential information disclosure form did not identify the inmate who provided the information. It did inform Villa that he had been identified as "associating with the Mexican Mafia" and being on the "Mesa." It also indicated that the information was considered to be reliable under section 3321, subdivision (c)(2), (3) and (4).

After Villa was provided with the information, an IGI gang investigator interviewed him regarding the sources used to validate his association with the Mexican Mafia. Villa offered a written explanation about each of the source items. He stated the first source item is merely a greeting card, and he does not know Fermin Garcia and has not corresponded with him. Villa also noted that the second source item was drawn by someone else who wrote to him, and he has no control over what someone else draws or writes.

In regard to the third source item, Villa explained that he was in possession of Encalade's chronos because he was helping Encalade with his appeal of his gang validation. Villa said, "I help these guys out with 602's, in regards to their validation, because most of these guys can't write, so what [am] I suppose to say no."[4] Villa also stated that the law library officer gave Villa the chronos with Encalade's permission.

In response to the fourth source item, Villa argued the confidential memorandum was based on hearsay and was unreliable.

The IGI investigator was not persuaded by Villa's explanations, and concluded there was sufficient evidence to validate Villa as an associate of the Mexican Mafia prison gang. The IGI investigator then forwarded the source items to the office of correctional safety (OCS) for review and acceptance of Villa's prison gang validation. The OCS ultimately accepted the validation and assigned Villa to the ASU pending transfer or annual review.

---

[4] CDCR form 602 is the form an inmate completes to appeal any policy, decision, action, condition, or omission by the CDCR or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare. (See §§ 3084, 3084.1.) In the form 602, the inmate must describe the specific issue under appeal and the relief requested. (§ 3084.2, subd. (a).)

Villa appealed the decision directly within the prison system to no avail. He then filed a writ of habeas corpus with the Superior Court of Kern County. The superior court denied the petition.

Villa subsequently filed a writ of habeas corpus with the Fifth District Court of Appeal. However, that court advised Villa that he needed to file his petition in this court, because the conduct at issue occurred while Villa was housed in Centinela, which is located within the Fourth Appellate District, Division One. We asked the Attorney General for an informal response to Villa's petition. After receipt and consideration of the informal response, we issued an order to show cause why relief should not be granted and appointed an attorney.

Villa filed a supplemental petition in which he argues his gang validation is not based on adequate evidence. The Attorney General filed a return, denying that Villa's due process rights were violated and contending the validation was supported by "some evidence."

Villa filed a traverse.

## DISCUSSION

### *VILLA'S VALIDATION AS AN ASSOCIATE OF A PRISON GANG IS NOT SUPPORTED BY SOME EVIDENCE*

#### A. Gang Validation

■ "The Legislature has given the Director of the Department of Corrections broad authority for the discipline and classification of persons confined in state prisons. (Pen. Code, §§ 5054, 5068.) This authority includes the mandate to promulgate regulations governing administration, classification and discipline." (*In re Lusero* (1992) 4 Cal.App.4th 572, 575 [5 Cal.Rptr.2d 729].) One such classification is that of prison gang member or associate of a prison gang. Inmates are prohibited from knowingly promoting or assisting gangs because the CDCR has decreed that gangs "present a serious threat to the safety and security of California prisons." (§ 3023, subds. (a), (b).)

■ Charged with the extraordinarily difficult task of safely housing the inmates and managing prison gangs, the CDCR adopted section 3378 for identifying "validated" inmates as prison gang affiliates or members and placing them in restrictive housing. Under section 3378, a gang investigator

or coordinator investigates an inmate's gang involvement allegations. (§ 3378, subd. (c).) As part of the investigation, the investigator must find at least three independent source items to substantiate the inmate's association with or membership in a gang. (§ 3378, subd. (c)(3) & (4).) At least one source item must be a "direct link to a current or former validated member or associate of the gang, or to an inmate/parolee or any person who is validated by the department within six (6) months of the established or estimated date of activity identified in the evidence considered." (§ 3378, subd. (c)(3) & (4).)[5]

Section 3378, subdivision (c)(8) provides that the "source item[s]" for determining gang membership/association can be based on self-admission, tattoos, symbols, written material, photographs, staff information, information from other agencies, association with other gang members or associates, information from informants, offenses, legal documents (e.g., probation officer's report or court transcripts), visitors, communications, and debriefing reports.

After an investigation into gang involvement has been completed by the gang investigator or coordinator and the identification of the inmate as a gang member or associate has been verified, the verification "shall be validated or rejected by the chief, [OCS], or a designee." (§ 3378, subd. (c)(6).) Along with the source items, the validation packet provided to the OCS includes the written documentation of the investigator's interview with the inmate in which the inmate offers his opinion on the source items. (§ 3378, subd. (c)(6)(E).) Although Villa does not claim the CDCR failed to follow the required procedures under section 3378, we provide this brief description of the process to provide some context to our analysis below.

### B. Standard of Review

We apply the "some evidence" test to our review of the CDCR's validation of Villa as an associate of a prison gang. (*In re Furnace* (2010) 185 Cal.App.4th 649, 659 [110 Cal.Rptr.3d 820] (*Furnace*).) Thus, we will conclude "the requirements of due process are satisfied if some evidence supports the decision of the prison disciplinary board . . . ." (*Superintendent v. Hill* (1985) 472 U.S. 445, 455 [86 L.Ed.2d 356, 105 S.Ct. 2768].) "This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . .' [Citation.]" (*Ibid.*)

---

[5] Section 3378 draws a distinction between a member of a prison gang and an associate of a prison gang. However, the requirements of validating a member or an associate are the same. (Compare § 3378, subd. (c)(3) with § 3378, subd. (c)(4).) Here, the CDCR found Villa to be an associate of the Mexican Mafia prison gang.

### C. The First and Second Source Items

In his petition, Villa challenges the CDCR's reliance on the first source item (the greeting card) and the second source item (the drawing of the symbol), arguing that neither source item evidences his association with a prison gang. However, in the supplemental petition, Villa concedes that both these sources satisfy section 3378, subdivision (c)(8) and that his "non-incriminating explanation" for possessing these items is irrelevant to our review. We agree.

Our review of the CDCR's decision does not involve the weighing of evidence, the examination of the entire record, or assessing the credibility of witnesses. (*Furnace, supra,* 185 Cal.App.4th at p. 659.) Villa's explanations thus are immaterial to our review. In addition, we agree the first and second source items both satisfy section 3378, subdivision (c)(8).

The CDCR did not consider either the first or second source item a "direct link" under section 3378, subdivision (c)(4). Also, the Attorney General does not argue that either of these source items is a "direct link."[6] We thus do not analyze if the first or second source item is a "direct link" that supports the CDCR's validation of Villa as an associate of the Mexican Mafia.

### D. The Third Source Item

The third source item is actually comprised of multiple documents: Encalade's chronos that Villa had in his possession. Encalade is a validated associate of the Mexican Mafia. Villa insists he had the documents only because he was helping Encalade with a legal matter as he is permitted to do under section 3163. In response, the Attorney General, citing *Furnace, supra,* 185 Cal.App.4th at page 663, contends we cannot consider Villa's explanation because we do not weigh the evidence.

Here, we will not reweigh the evidence or second-guess the CDCR's credibility determinations. Nevertheless, Villa insists he was permitted to possess Encalade's chronos in assisting Encalade in preparing legal documents under section 3163. As such, we must interpret section 3163 to ascertain if it allowed Villa to have Encalade's chronos.

---

[6] For the first time, at oral argument, the Attorney General argued the first source item (the greeting card) could also serve as a "direct link." The Attorney General did not raise this issue in the return, and we deem this issue waived. (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 595 [101 Cal.Rptr.2d 86].)

### 1. *Cabrera* and Rules Governing Our Interpretation of Regulations

■ "Rules governing the interpretation of statutes also apply to interpretation of regulations. [Citation.] 'In interpreting regulations, the court seeks to ascertain the intent of the agency issuing the regulation by giving effect to the usual meaning of the language used so as to effectuate the purpose of the law, and by avoiding an interpretation which renders any language mere surplusage. [Citation.]' [Citation.]" (*Diablo Valley College Faculty Senate v. Contra Costa Community College Dist.* (2007) 148 Cal.App.4th 1023, 1037 [56 Cal.Rptr.3d 294].) We accord deference to the CDCR's interpretation of the governing regulations in matters that fall within its expertise. (*Cabrera, supra,* 55 Cal.4th at p. 688.)

In *Cabrera, supra,* 55 Cal.4th 683, the Supreme Court "granted review to resolve a question of law concerning the deference owed to the CDCR in interpreting its own regulations governing the identification of inmates as prison gang affiliates." (*Id.* at p. 687.) The Supreme Court noted that the Court of Appeal and the CDCR had differing interpretations of one of the provisions in section 3378. The CDCR considered two drawings signed by validated Mexican Mafia affiliates directly linked the inmate to those gang affiliates thus satisfying the requirements of section 3378, subdivision (c)(4). (*Cabrera, supra,* at p. 689.)

The Court of Appeal accepted the CDCR's definition of "direct link" (§ 3378, subd. (c)(4)) as encompassing a connection that is " ' "without interruption or diversion" and "without any intervening agency or step." ' " (*Cabrera, supra,* 55 Cal.4th at p. 690.) The Court of Appeal also adopted the CDCR's definition of "association with validated gang affiliates" (§ 3378, subd. (c)(8)(G)) to mean " 'a "loose relationship as a partner, . . . colleague, friend, companion, or ally" with a validated gang affiliate.' " (*Cabrera, supra,* at p. 690.) The Court of Appeal determined this connection could be established by " 'information related to the inmate's loose relationship with a gang affiliate.' " (*Ibid.*)

The Supreme Court noted, however, "the Court of Appeal departed from the CDCR's construction of the regulation when the court purported to 'combine the definitions and reach a conclusion as to what is meant by "direct link" when the source item used is the inmate's "association with validated gang affiliates . . . ." ' " (*Cabrera, supra,* 55 Cal.4th at p. 690.) The Court of Appeal then determined that the direct link required a " 'reciprocal (i.e., mutual or two-way) interaction between the two individuals forming the relationship.' " (*Ibid.,* italics omitted.) Ultimately, the Court of Appeal relied on the lack of evidence of a " 'mutual relationship, even a loose one,' " to

conclude that the CDCR had failed to establish a "direct link" between Cabrera and any validated gang affiliate. (*Ibid.*)

■ The Supreme Court determined it was error for the Court of Appeal to reject the CDCR's interpretation without proper deference to the CDCR's view or acknowledgment of the CDCR's expertise in prison management. (*Cabrera, supra,* 55 Cal.4th at p. 690.) In reaching its conclusion, the court observed that the CDCR offered an interpretation of the "direct link" requirement that was not clearly unreasonable and that "nothing in the plain language of section 3378 requires proof the inmate formed a reciprocal or mutual relationship with a validated gang affiliate in order to establish a direct link . . . ." (*Cabrera, supra,* at p. 691.)

As instructed by our high court, we reconsider Villa's petition and our interpretation of the pertinent regulations in light of *Cabrera, supra,* 55 Cal.4th 683.

## 2. Interpretation of Section 3163

As we note above, in considering the third source item, we must interpret section 3163. In reviewing the record, it does not appear the CDCR has offered any interpretation of section 3163. Indeed, it is not clear the CDCR ever considered the impact of section 3163 during the validation process. In the return, the Attorney General offers no interpretation of section 3163 or any explanation of CDCR's interpretation of section 3163. Accordingly, the guidance provided in *Cabrera, supra,* 55 Cal.4th 683 is not applicable to our interpretation of section 3163 here.

Section 3163 provides: "One inmate may assist another in the preparation of legal documents, but shall not receive any form of compensation from the inmate assisted. Legal papers, books, opinions and forms being used by one inmate to assist another may be in the possession of either inmate with the permission of the owner. All papers must be returned to the respective owners when either inmate is transferred to another institution or when other administrative action prevents direct communications between the inmates. An inmate may be barred from giving legal assistance to other inmates when violations of regulations and established procedures relate directly to such activities. An inmate will not be barred from giving or receiving legal assistance for violations of regulations and procedures which are unrelated to providing or receiving legal assistance. However, no otherwise prohibited contacts or access to prohibited areas will be permitted because of this regulation."

■ Section 3163 is a straightforward regulation. It clearly permits one inmate to help another inmate in preparation of legal documents. In doing so,

the assisting inmate may possess the other inmate's "[l]egal papers, books, opinions and forms." The regulation does not prevent an inmate from helping another inmate who is a validated member or associate of a prison gang. Indeed, the regulation implies otherwise: "An inmate will not be barred from giving or receiving legal assistance for violations of regulations and procedures which are unrelated to providing or receiving legal assistance." (§ 3163.) Thus, unless Villa or Encalade committed some violation of a regulation related to section 3163, they may both enjoy section 3163's benefits.

There is nothing in the record that indicates either Villa or Encalade committed a violation in the context of giving or receiving legal assistance. Although section 3163 clearly does not allow "otherwise prohibited contact[]," we struggle to find any evidence that Villa and Encalade were prohibited from interacting with each other, especially in connection with Villa providing legal services to Encalade. Indeed, the interaction in question appears somewhat facilitated by the CDCR because the law library officer gave Encalade's chronos to Villa.

Also, the chronos found in Villa's possession are markedly different than other documents that could have linked him to another validated gang member or associate. For example, the CDCR has found source items in the possession of an inmate that include the contact information of a validated gang member, the roster of gang members, a letter to or from a validated gang member, and a document chronicling the activity of certain validated gang member and associates in the prison.[7] All of these documents more than likely would be created by an inmate. Here, the chronos were prepared by CDCR personnel and relate to the validation of Encalade as a gang associate. They are precisely the type of documents we would expect Villa to have if he was assisting Encalade with the preparation of legal documents to challenge Encalade's validation as an associate of the Mexican Mafia. In fact, they would be essential in that endeavor. In contrast, the other documents we discuss would not necessarily be critical to aid with the preparation of legal documents.

In addition, Villa's contention is underscored by the realities of prison life. Villa points out that many of the inmates he helps cannot read. Moreover, he implies that he could face consequences if he refuses to help them. Thus, if we adopt the Attorney General's position that it does not matter if Villa was permitted to posses the chronos under section 3163, Villa must suffer an untenable situation. He can refuse to aid a validated gang member with his

---

[7] We took examples of other source items providing the required "direct link" from unreported California and federal cases. However, we did not otherwise rely on those unreported cases.

legal work and deal with the consequences from the gang member for doing so. Or he can assist the gang member, as permitted under section 3163, but confront the possibility that the CDCR could use a document associated with this action as a source item to validate his prison gang association. The law does not countenance such a dilemma. And we see nothing in the regulations indicating the CDCR aimed to subject inmates to this quandary.

■ We agree with Villa that he cannot be punished under one regulation merely for acting in accordance with another regulation. If the CDCR had intended to prohibit an inmate from helping a validated gang member or associate with the preparation of his legal documents, section 3163 would have contained such a prohibition. It does not, and neither the Attorney General's argument nor our independent research compels us to read this prohibition into section 3163. Accordingly, we conclude that documents possessed by an inmate to assist him in preparing another inmate's legal documents cannot be used as source items under section 3378, subdivision (c).

Our conclusion, however, does not transform section 3163 into a talisman to ward off gang validation at the mere mention of the regulation. As it falls to the CDCR to weigh evidence in validating an inmate as a gang member or associate, it is the province of the gang investigator and the OCS to determine if the inmate claiming to be operating under section 3163 is actually providing legal services to the other inmate. The determination logically would be made as part of the validation process.

Here, the investigator stated it was "not reasonable" to believe that Villa could possess Encalade's chronos and "not be active with the [Mexican Mafia] prison gang." The OCS apparently agreed with the investigator. However, Villa provided the investigator with a very reasonable explanation for his possession of the material: He was helping Encalade with his appeal. Further, Villa told the investigator that he received the chronos from the law library officer. There is no indication in the record that Villa's explanation was even considered, and if it was, why it was discarded. The failure of the investigator and/or the OCS to consider Villa's explanation that he possessed the chronos to help Encalade prepare legal documents renders the CDCR's reliance on the chronos as a source item under section 3378, subdivision (c) an abuse of discretion. (See *Furnace, supra,* 185 Cal.App.4th at p. 659.)

■ In summary, documents that are in the possession of an inmate who is providing legal assistance to another inmate under section 3163 cannot be used as a source item to validate the inmate as an associate of a prison gang. However, it is the CDCR's domain to ascertain, in the first instance, if the

inmate has the subject documents for purposes allowed under section 3163. Here, the CDCR made no such determination.[8]

### E. The Fourth Source Item

The fourth source item is a confidential memorandum that memorializes an investigator's interview with a confidential informant. Section 3378, subdivision (c)(8)(H) explicitly provides that a source item can be based on information from a confidential informant: "Informants. Documentation of information evidencing gang affiliation from an informant shall indicate the date of the information, whether the information is confidential or nonconfidential, and an evaluation of the informant's reliability. Confidential material shall also meet the requirements established in section 3321. Staff shall articulate how the information specifically relates to the inmate's involvement with the gang as a member or associate. The information may be used as a source of validation if the informant provides specific knowledge of how he/she knew the inmate to be involved with the gang as a member or associate. Multiple confidential sources providing information regarding a single gang related incident or behavior shall constitute one (1) source item. Exclusive reliance on hearsay information provided by informants will not be used for validation purposes. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution."

Here, the CDCR relied on the confidential memorandum. This confidential memorandum was filed under seal and we reviewed it in camera. The confidential memorandum explains that the informant stated Villa has a position on the "Mesa." In this position, Villa would be on a governing body of inmates who have volunteered and agreed to enforce and direct criminal prison gang activities within the prison for the benefit of the Mexican Mafia. The confidential memorandum also states that it satisfies the requirements of reliability under section 3321, subdivision (c)[9] because the information provided by the confidential source is self-incriminating and part of the information provided is corroborated through investigation. The confidential memorandum details that disclosure of the identity of the informant may

---

[8] We express no opinion whether the CDCR may attempt to validate Villa as an associate of the Mexican Mafia if it properly considers Villa's explanation for possessing the chronos under section 3163 and finds the explanation not credible.

[9] Under section 3321, subdivision (c), a confidential source is reliable if he or she satisfies at least one of the following criteria: "(1) [t]he confidential source has previously provided information which proved to be true[;] [¶] (2) [o]ther confidential source[s] have independently provided the same information[;] [¶] (3) [t]he information provided by the confidential source is self-incriminating[;] [¶] (4) [p]art of the information provided is corroborated through investigation or by information provided by non-confidential sources[;] [¶] (5) [t]he confidential source is the victim."

endanger the informant's safety (§ 3321, subd. (a)(1)) and jeopardize the safety and security of the prison (§ 3321, subd. (a)(2)).

Per section 3378, subdivision (c)(6)(C), Villa was not provided with a copy of the confidential memorandum, but instead, received a confidential information disclosure form. The disclosure form captured the salient information from the confidential memorandum. Villa, however, argues that the confidential memorandum on which the disclosure form is based is unreliable and based entirely on hearsay. As we discuss above, the confidential memorandum appears to be reliable under section 3321, subdivision (c). Although some of the statements of support are fairly conclusory, we see nothing in the confidential memorandum that leads us to conclude the CDCR's determination of the reliability of the informant was arbitrary, capricious, unreasonable, or an abuse of discretion.

Villa, however, claims the informant's reliability is somehow undermined because the disclosure form does not list his correct inmate number.[10] Villa is correct that the disclosure form lists an incorrect inmate number for him in the body of the disclosure form where it discusses the information received from the confidential informant. This error, however, does not render the disclosure form, confidential memorandum, or confidential informant unreliable. At the top of the disclosure form, Villa's correct inmate number is listed. Further, the confidential memorandum on which the disclosure form is based lists Villa's correct inmate number. Thus, the incorrect inmate number on the disclosure appears to be nothing more than a typographical error and does not weaken the reliability of the fourth source item.

Although we determine the confidential memorandum is a valid source item under section 3378, subdivision (c)(8), it does not automatically follow that it also is a "direct link" as required in section 3378, subdivision (c)(4). Villa contends the confidential memorandum cannot provide a direct link to a current or former validated gang member or associate because it does not mention anyone by name. In other words, it only links Villa to the Mexican Mafia in general, not to a specific person. The Attorney General basically ignores Villa's argument and asserts the CDCR's credibility determination is entitled to deference.

To resolve the issue before us, we must interpret section 3378, subdivision (c)(4). Specifically, we must determine if this subdivision requires the direct link to be to an actual person. Unlike the Court of Appeal's interpretation considered by the Supreme Court in *Cabrera, supra,* 55 Cal.4th 683, we

---

[10] The confidential information disclosure form also did not indicate that the confidential informant incriminated himself in a criminal activity at the time of providing the information.

are not departing from the CDCR's construction of a regulation. Indeed, in validating Villa as an associate of a prison gang under section 3378, the CDCR did not consider the fourth source item to be a direct link. For the first time, in the return, the Attorney General takes the position that the fourth source item also can be a "direct link" under section 3378, subdivision (c)(4) if we determine the third source is invalid. To support her position, the Attorney General, with little explanation, contends "the fourth source item, the confidential memorandum, provides the direct link between Villa and the Mexican Mafia." It is unclear if the Attorney General is interpreting section 3378, subdivision (c)(4) as only requiring a direct link between the inmate and the gang in general. To the extent the Attorney General is proposing such an interpretation, we determine this interpretation to be clearly unreasonable under the plain language of section 3378, subdivision (c)(4) for the reasons below. (See *Cabrera, supra,* at pp. 691–692.)

 Section 3378, subdivision (c)(4) states that at least one source item must be a "direct link to a current or former validated member or associate of the gang, or to an inmate/parolee or any person who is validated by the department within six (6) months of the established or estimated date of activity identified in the evidence considered." The plain words of this regulation indicate that the "direct link" must be to a person: "a current or former validated member or associate . . . an inmate/parolee, or any person . . . ." (*Ibid.*) Because the subdivision clearly requires the direct link to a person, a link to the gang in general is insufficient.

 Further, our interpretation makes sense in the context of the purpose of the regulation. Section 3378 provides a procedure for validating inmates as members or associates of prison gangs. The CDCR saw fit to require more evidence to validate an inmate as a member or associate of a gang than a statement that an inmate is actively involved in a gang. To this end, the CDCR determined that at least three source items are needed to validate an inmate as an associate or member of a prison gang. In addition, the CDCR requires that one of the source items be a "direct link" to an actual person, not just the gang itself. Such a requirement prevents the validation process from becoming a tautological exercise. No inmate can be validated simply by the suggestion that he is involved in a prison gang. Mere suppositions will not suffice. Instead, evidence is needed consisting of at least three separate source items, including a "direct link."

Finally, our interpretation is buttressed by the CDCR's reliance on the source items here. The CDCR did not state that the confidential memorandum was a "direct link" under section 3378, subdivision (c)(4). Instead, it found

that Encalade's chronos satisfied the "direct link" requirement. The CDCR therefore apparently did not believe the confidential memorandum satisfied the "direct link" requirement of section 3378, subdivision (c)(4), but the Attorney General offered this justification as a fallback position in response to the habeas corpus petition.

As such, the critical question becomes, does the confidential memorandum directly link Villa to a person who is a validated member or associate of the Mexican Mafia. We determine that it does not.

The confidential memorandum includes the identity of the informant. He is not a "current or former validated member or associate of the [Mexican Mafia]" or "an inmate/parolee or any person who is validated by the department within six (6) months of the established or estimated date of activity identified in the evidence considered." (§ 3378, subd. (c)(4).) Consequently, the confidential informant himself cannot satisfy the requirements of section 3378, subdivision (c)(4) as a "direct link."

The confidential memorandum indicates that the informant named additional inmates, besides Villa, who also serve on the "Mesa." None of these inmates, however, are validated members or associates of the Mexican Mafia. Thus, these individuals do not satisfy the "direct link" requirement under section 3378, subdivision (c)(4). There is no other mention of members or associates of the Mexican Mafia, validated or otherwise, in the confidential memorandum.

In short, there is nothing in the confidential memorandum that links Villa to another validated member or associate of the Mexican Mafia. The Attorney General does not argue otherwise. Hence, the confidential memorandum cannot serve as the "direct link" to satisfy the requirements of section 3378, subdivision (c)(4).

## F. Conclusion

We appreciate the herculean task the CDCR faces in maintaining the safety, stability, and security of prisons in light of the danger of prison gangs. We also acknowledge that the CDCR is in a far better position than the courts to evaluate the source items and validate inmates as associates of prison gangs under section 3378. As such, we tread lightly in reviewing the CDCR's decisions in this area by applying a "some evidence" standard of review.

(*Furnace, supra*, 185 Cal.App.4th at p. 659.) Yet, even under this extremely deferential standard, we are limited to the regulations as written and the record before us.

Section 3163 explicitly permits an inmate to assist another inmate in filing legal documents. As part of this assistance, either inmate is authorized to possess documents relating to the preparation of legal documents. Here, Villa was in possession of Encalade's chronos that were used to validate Encalade as an associate of the Mexican Mafia. He was given the chronos by the law library officer to assist Encalade in his appeal. If Villa possessed the chronos to assist Encalade as sanctioned under section 3163, the chronos cannot then serve as a source item under section 3378 to validate Villa as an associate of the Mexican Mafia. A contrary determination would subject Villa to a penalty for possessing documents he is permitted to have under another regulation. Here, the record does not indicate that the CDCR considered Villa's explanation for possessing the chronos in light of section 3163. Its failure to do so renders its reliance on the third source item arbitrary, capricious, and unreasonable.

Even without Encalade's chronos, the CDCR still had three source items from which to validate Villa as an associate of the Mexican Mafia. Of these remaining sources, the Attorney General only argues that the confidential memorandum is a "direct link." However, the confidential memorandum does not provide a "direct link" from Villa to another person, specifically a former or current validated associate or member of the Mexican Mafia. The CDCR decided to require this "direct link" to be to a specific person, not the gang in general. (See § 3378, subd. (c)(4).) Had it intended the "direct link" to be satisfied by showing merely a link to the gang in general, the CDCR would have written the regulation to state as much. It did not, and we cannot read such words into the regulation without any indication that the CDCR intended the requirements of section 3378, subdivision (c)(4) to be satisfied by a "direct link" to the gang in general as opposed to a specific gang member or associate as the language expressly requires. Without a source item to fulfill the "direct link" to a person as required under section 3378, subdivision (c)(4), the CDCR's validation of Villa as an associate of the Mexican Mafia is not supported by "some evidence." Accordingly, we have no choice but to grant the relief requested.

### DISPOSITION

Let a writ of habeas corpus issue directing the CDCR to (1) expunge Villa's validation as an association of the Mexican Mafia prison gang, (2)

report the expungement to all gang-related law enforcement databases and clearinghouses to which the original validation was reported previously, and (3) cease housing Villa in the ASU based on gang validation.

Nares, J., and Haller, J., concurred.

A petition for a rehearing was denied April 9, 2013.