Filed 8/20/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| In re BRANDON DIXON | D085146 |
|---|---|
| on | |
| Habeas Corpus. | (Imperial County Super. Ct. No. EHC000723) |

ORIGINAL PROCEEDINGS on a petition for writ of habeas corpus seeking relief other than a release from custody. Petition granted.

John L. Staley, under appointment by the Court of Appeal, for Petitioner.

Rob Bonta, Attorney General, Sara J. Romano, Assistant Attorney General, Amanda J. Murray and Gregory J. Marcot, Deputy Attorneys General, for Respondent.

Brandon Dixon, a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR), filed a petition for writ of habeas corpus challenging a disciplinary adjudication finding him guilty of a serious institutional rule violation for being in possession of alcohol. This court issued an order to show cause limited to the issue of whether the chief disciplinary officer (CDO) who classified the original rule violation was disqualified from reviewing and approving the disciplinary decision of the

senior hearing officer (SHO) after the rule violation report (RVR) was reissued and reheard.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Dixon is incarcerated at a California state prison.  In January 2023, a prison guard conducted a search of a cell that Dixon shared with inmate L. Kelly.  The guard discovered a plastic bag containing approximately five gallons of inmate manufactured alcohol.  He believed that both Dixon and Kelly knew about the alcohol because it was emitting a strong odor.  Accordingly, he wrote a RVR for each inmate.[1]

Captain G. Hopper reviewed the report and classified the violation as serious.  Following a disciplinary hearing, the SHO found Dixon guilty as charged.  C. Bustamante, acting as the CDO at that time, reviewed and affirmed the hearing results.

Dixon filed an administrative appeal.  The CDCR office of grievances found there was merit to Dixon's claim that he was denied due process and ordered the CDO to order the RVR reissued and reheard.

Captain T. Carranza classified the reissued RVR in June 2023.  The classification was the same as the original RVR.  An investigative employee recorded a brief interview with Kelly in a supplemental report.  Kelly said that Dixon had no knowledge of the alcohol and had gone to vocational training for the day approximately two hours before the search.  At the hearing, Kelly stated further that there was no alcohol in the cell when Dixon left.

The SHO concluded there was sufficient evidence indicating that Dixon knew about the alcohol—including the reporting officer's statement that

---

[1]     The merits of the offense are not at issue here, but we note that Dixon has continually asserted that he had no knowledge of the alcohol.

2

there was a large quantity of alcohol in the cell that was ready to consume—and therefore found Dixon guilty as charged. He recommended a 91-day loss of conduct credits and a 90-day loss of pay. Dixon disputes many of the factual findings in the written disciplinary hearing results.

Hopper, acting as associate warden and CDO, conducted an audit of the disciplinary proceedings and affirmed the hearing results, including the disposition.

Dixon filed a second administrative appeal but did not prevail. He then filed a petition for writ of habeas corpus in the trial court, which the trial court denied, and a petition for writ of habeas corpus in this court.

## II. DISCUSSION

Dixon raised several issues related to the RVR proceedings in his initial habeas petition. This court issued an order to show cause limited to the question of whether Hopper's role in classifying the original RVR disqualified him from reviewing and approving the disciplinary hearing results on the reissued and reheard RVR in his new role as CDO. In his supplemental petition, Dixon asserts the plain language of California Code of Regulations, title 15, section 3320, subdivision (h)[2] (§ 3320(h)) precluded Hopper from serving as the reviewing officer on the RVR.

### A. Relevant Legal Principles and Standard of Review

As limited, the petition presents a question of statutory interpretation that we review de novo. (*Doe v. Brown* (2009) 177 Cal.App.4th 408, 417 ["We apply the de novo standard of review to this claim, since the claim raises an

---

[2] Further unspecified regulatory references are to the "General Institution Regulations" related to "Incarcerated Person Discipline" found in title 15, division 3, chapter 1, subchapter 4, article 5 of the California Code of Regulations (Regulations). Section references are to the Regulations unless otherwise specified.

3

issue of statutory interpretation"].)  " 'Rules governing the interpretation of statutes also apply to interpretation of regulations.' " (*In re Villa* (2013) 214 Cal.App.4th 954, 964.)  " ' "In interpreting regulations, the court seeks to ascertain the intent of the agency issuing the regulation by giving effect to the usual meaning of the language used so as to effectuate the purpose of the law, and by avoiding an interpretation which renders any language mere surplusage." ' " (*Ibid*.)

As relevant here, the " 'Legislature has given the Director of the Department of Corrections broad authority for the discipline and classification of persons confined in state prisons.  [Citations.]  This authority includes the mandate to promulgate regulations governing administration, classification and discipline.' " (*In re Villa, supra*, 214 Cal.App.4th at p. 961.) "We accord deference to the CDCR's interpretation of the governing regulations in matters that fall within its expertise." (*Id*. at p. 964.)  At the same time, "[w]here a statute empowers an administrative agency to adopt regulations, those regulations must be consistent and not conflict with the governing statute." (*Kern County Hospital Authority v. Dept. of Corrections & Rehabilitation* (2023) 91 Cal.App.5th 1313, 1326.)

Additionally, we are cognizant that prison disciplinary proceedings are subject to minimum due process requirements, including the right to an impartial decisionmaker.  (See *Wolff v. McDonnell* (1974) 418 U.S. 539, 570–571.)  A failure to follow the CDCR's own rules and regulations may result in the denial of the procedural due process afforded to prisoners in this context, and generally requires reversal of the underlying decision.  (See *In re Fratus* (2012) 204 Cal.App.4th 1339, 1348–1352; *Gregory v. State Bd. of Control* (1999) 73 Cal.App.4th 584, 595 ["A public entity has a ministerial

duty to comply with its own rules and regulations where they are valid and unambiguous"].)

With these principles in mind, we turn to the underlying statutory and regulatory provisions.

## B.    Relevant Statutory and Regulatory Provisions

Penal Code sections 2931 and 2933 allow prisoners to earn credit through work and good behavior. These credits may not be forfeited without due process. (See *Gomez v. Johnson* (N.D.Cal. Apr. 21, 1994, No. C 94-0575 DLJ) 1994 U.S. Dist. Lexis 5598 at p. *3 (*Gomez*).) Penal Code section 2932 allows prisoners to lose those credits for acts of misconduct and sets forth certain procedural requirements where a disciplinary action may result in such a loss of credits. Penal Code section 2932, subdivision (c)(1)(A) specifies that the CDCR "shall, using reasonable diligence to investigate, provide written notice to the prisoner" in a timely manner; that the "written notice shall include the specific charge, the date, the time, the place that the alleged misbehavior took place, the evidence relied upon, a written explanation of the procedures that will be employed at the proceedings and the prisoner's rights at the hearing"; and that the "hearing shall be conducted by an individual who shall be independent of the case."

The California Code of Regulations set forth additional regulations related to the discipline of incarcerated persons, and the associated procedural requirements. Section 3312 specifies that inmate misconduct shall be handled through verbal counseling, a counseling only rules violation report, or an RVR. Any misconduct that is not minor in nature must be reported on a standard form RVR, which shall contain certain specified minimum disclosures regarding the charged offense and the inmate's rights to an administrative hearing. (§ 3312, subd. (a)(3).) In addition, as discussed

5

in more detail *post*, section 3312, subdivision (c) provides that "[a]ll disciplinary methods and actions shall be reviewed by the CDO, who shall be the institution head or a designee not below the level of Correctional Administrator or Parole Administrator I."

Section 3313 discusses the process for classifying the level, or severity, of the charged rule violation.[3] Section 3313, subdivision (c) states that the classification may be changed as follows:

> "(1) Before the disciplinary hearing, the official who initially classified the RVR or a staff member at a higher level may change the classification of the RVR.

> "(2) During the disciplinary hearing, the official conducting the hearing may reduce a serious classification to administrative as a finding of the hearing if the reduced charge meets the criteria of an administrative violation as described in section 3314.

> "(3) After the disciplinary hearing, the chief disciplinary officer may reduce a serious classification to administrative if the reduced charge meets the criteria of an administrative violation as described in section 3314.

> "(4) After the disciplinary hearing, an administrative classification shall not be changed to serious unless the chief disciplinary officer or director orders a rehearing of the charges as a serious rule violation."

Section 3313, subdivision (b) specifies, "Staff who review or classify a RVR shall not serve as the disciplinary hearing official for that rule violation."

---

[3] Sections 3314 and 3315 provide more detail regarding the types of misconduct that constitute administrative and serious rule violations, respectively. "The introduction, distribution, possession, or use of controlled substances, alcohol, or dangerous contraband" is a serious rule violation. (§ 3315, subd. (a)(2)(D).)

6

Regulation section 3320 sets forth the rule violation hearing procedures in more detail. It specifies that the inmate must receive a classified copy of the RVR in a timely manner, and that the "charges shall be heard within 30 days from the date the incarcerated person is provided a classified copy of the RVR," unless certain exceptions apply. (*Id.*, subds. (a) & (b).)

As relevant here, regulation section 3320(h) addresses the requirement that the hearing be conducted by an individual independent of the case, and provides:

> "Staff who observed, reported, *classified*, supplied supplemental reports to, or investigated the alleged rule violation; who assisted the incarcerated person in preparing for the hearing; *or* for any other reason have a predetermined belief of the incarcerated person's guilt or innocence *shall not hear the charges or be present during deliberations to determine guilt or innocence and disposition of the charges*." (Italics added.)

## C. Application of Section 3320(h)

There is no dispute that Hopper classified the original RVR in January 2023. A different officer, Bustamante, reviewed and affirmed the findings and disposition for the original RVR, as the sitting CDO at that time. Dixon's first administrative appeal was granted, and the *same* RVR was then reissued and reheard, to ensure that Dixon was provided a full opportunity to present witness statements in his defense. The reissued RVR is based on the same original offense and contains the same description of the cell search and charges as the original RVR. A different officer, T. Carranza, classified the offense on the reissued RVR. Carranza's classification was the same as Hopper's original classification. In the interim, Hopper was elevated to CDO and, following a second hearing, Hopper reviewed and affirmed the final findings and disposition as then-acting CDO.

Dixon asserts that Hopper's dual role of classifying the original offense and then reviewing and affirming the final decision as CDO violated the plain language of constituted section 3320(h). Respondent concedes that Hopper played a dual role in classifying the offense and reviewing the hearing results as CDO, but asserts that section 3320(h) did not preclude Hopper from conducting the posthearing review. He argues that the CDO review is not "hear[ing] the charges or be[ing] present during deliberations to determine guilt or innocence and disposition of the charges," and that section 3320(h) only precludes a disqualified officer from participating in the disciplinary hearing itself, as a factfinder.

Respondent also states, somewhat summarily, "[T]he law only prohibits correctional staff who may have a predetermined belief of the incarcerated person's guilt or innocence from adjudicating or influencing disciplinary matters." To the extent Respondent intends to assert that classifying the offense was not sufficient to disqualify Hopper, or that Dixon must prove that Hopper had "a predetermined belief of the incarcerated person's guilt or innocence," we readily reject that assertion.

In *People v. Superior Court* (*Hamilton*) (1991) 230 Cal.App.3d 1592, the court addressed whether an officer who classified the offense could also act as a hearing officer under a prior iteration of section 3320. (*Hamilton*, at p. 1595.) Although the previous provision did not explicitly name officers that classified the offense, the court found the officer "was required to evaluate the report to assure that the proper charge was reflected and to classify the violation as serious or administrative," and was therefore put in "a decisionmaking role in connection with the charging." (*Id*. at p. 1597.) The court concluded that "[s]uch an active role in preparing the rules violation report must be characterized as a substantial involvement in the

8

circumstances underlying the charge," and that the officer was therefore disqualified from hearing the charges. (*Id.* at pp. 1597–1598; accord *In re Marti* (2021) 69 Cal.App.5th 561, 568–570 [officer who signed prior RVR for same violation likely had a predetermined belief about inmate's guilt or innocence and was therefore disqualified from serving as hearing officer under section 3320(h)].)

Section 3320(h) has since been amended to expressly include staff who "classified" the alleged rule violation. In its current form, section 3320(h) applies to any staff "who observed, reported, *classified*, supplied supplemental reports to, or investigated the alleged rule violation; who assisted the incarcerated person in preparing for the hearing; *or* for any *other* reason have a predetermined belief of the incarcerated person's guilt or innocence." The three clauses are plainly disjunctive, as evidenced by the "or" connector. (See *Bates v. Poway Unified School Dist.* (2022) 83 Cal.App.5th 907, 926 (*Bates*) [" 'the plain and ordinary meaning of the word "or," when used in a statute, is to designate separate, disjunctive categories' "].)

Accordingly, the issue we must decide in this case is whether the CDO's review of the RVR constitutes "hear[ing] the charges or be[ing] present during deliberations to determine guilt or innocence and disposition of the charges." (§ 3320(h).)

In our view, the plain language of section 3320(h) does not limit the disqualification to the hearing officer(s) overseeing the actual disciplinary hearing. It states that an officer who has prior knowledge or involvement in the matter, "shall not hear the charges *or* be present during deliberations to determine guilt or innocence and disposition of the charges." (§ 3320(h).) Again, the "or" is disjunctive and suggests an attempt to define alternatives.

9

(See *Bates, supra*, 83 Cal.App.5th at p. 926.) Thus, the prohibition is plainly not limited to just "hear[ing] the charges." Although we give deference to the CDCR's interpretation of its own governing regulations, we also avoid an interpretation that renders the language after the "or" surplusage. (*In re Villa, supra*, 214 Cal.App.4th at p. 964.) Thus, we must consider whether the review by the CDO is part of the "deliberations to determine guilt or innocence and disposition of the charges," even if not part of the actual "hearing."

We begin by examining the CDCR's stated purpose for the mandatory CDO review. Section 3312, subdivision (c) addresses the CDO's review of disciplinary actions, and states, "[a]ll disciplinary methods and actions shall be reviewed by the CDO, who shall be the institution head or a designee not below the level of Correctional Administrator or Parole Administrator I." In conducting that review, "[t]he CDO shall affirm, reverse, or modify the disciplinary action or credit forfeiture, or combine any of these actions." (*Id.*, subd. (c)(1).) "The CDO may order a different action, order a different method of discipline, dismiss a charge, order a rehearing of the charge, or combine any of these actions." (*Ibid.*) However, absent the discovery of new information or evidence, "an order for a different method of discipline or for rehearing of the charges shall not result in greater penalty or more severe action than that originally taken." (*Id.*, subd. (c)(2).)

In further describing the review process under section 3312, section 52080.3.4 of the CDCR Department Operations Manual (DOM)[4] provides, "[u]pon completion of the hearing portion of the violation charges,

---

[4] The DOM can be found on the CDCR's website at: https://www.cdcr.ca.gov/operations-manual/dom (as of August 20, 2025), archived at <https://perma.cc/4WH4-NZCS> [select "View the live page"].

an audit of the violation report shall be completed by the Chief Disciplinary Officer." (DOM, ch. 5, art. 23, § 52080.3.4, subd. (a).) Among other requirements, the audit "shall ensure" that "[t]he serious or administrative classification is correct," "[d]ue process and time constraints were met," "[f]indings and penalties were justified by documentation," and "[a]ny perceived retaliation [or bias] concerns were addressed." (*Id.*, § 52080.3.4, subd. (b).)

These regulations suggest that the CDO's review is expansive, and that the CDO is afforded significant discretion in terms of the ability to reduce or even dismiss the charge. While the CDO may not be making their own factual findings in the first instance, the regulations do require the CDO to verify that the evidence supports the findings that were made by the hearing officer. In addition, the CDO may reduce the prior classification of the offense, perhaps based on new evidence or factfinding developed at the hearing, or may dismiss the charges altogether. Here, since Hopper made the original classification, there is at least a reasonable perception that he may have had a predetermined belief regarding the validity of that classification. That is not the type of impartial decisionmaking that section 3320(h) seeks to preserve.

Moreover, it is apparent that the CDO's review is an integral part of the disciplinary hearing process. The DOM specifies that a "disciplinary action is not considered complete until all processing requirements including the hearing, postponement, and any re-hearing are completed as evidenced by the signature of the Chief Disciplinary Officer." (DOM, *supra*, ch. 5, art. 53, § 54100.8, subd. (b)(1)(B); accord *Petillo v. Peterson* (E.D.Cal., Oct. 24, 2017, No. 1:16-cv-0488-MJS (PC)) 2017 U.S. Dist. Lexis 177117 at p. *16 ["a disciplinary action is not considered complete until the hearing and

11

any re-hearings are completed, as memorialized by the signature of the Chief Disciplinary Officer"].)

The summary of disciplinary procedures and inmate rights at the end of the RVR confirms the same, and states, "DISPOSITION − At the end of the hearing, you will be advised of the findings and disposition of the charge. Within five working days, *following review of the Rules Violation Report by the Chief Disciplinary Officer*, you will be given a copy of the completed rule violation report, which will contain a statement of the findings and disposition and the evidence relied upon to support the conclusions reached. (CCP Section 3320)[.]" (Italics added.)

Thus, in our view, the review by the CDO is a required component of the ultimate determination of guilt or innocence and the disposition of the charges. The findings and disposition of the RVR are not final until the CDO completes their review. In doing so, the CDO must decide whether to lower the classification of the defense or dismiss the charges altogether. In that sense, the CDO is participating in the deliberations as to the guilt or innocence of the inmate, as well as the disposition of the charges. (See, e.g., *Department of Alcoholic Beverage Control v. Alcohol Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 5–6 [characterizing department director's ability to adopt, modify, or reject an ALJ's proposed decision as the department "exercis[ing] its adjudicatory power through a two-stage process."])

Respondent asserts the CDO's role in this review step is "akin to an appellate court's review of the trial court judgment." We disagree. Unlike an appeal, it is not incumbent on the inmate to establish before the CDO that an error occurred in the disciplinary hearing or decision, nor do they even have the opportunity to do so. Rather, the CDO review is a necessary step,

12

mandated by the implementing regulations, that must be completed before the disposition becomes final and is communicated to the inmate. It is therefore part of the deliberations for determining guilt or innocence and the disposition of the charges.

To the extent Respondent concedes that section 3320(h) would preclude an officer, like Hopper, who classified the violation from participating in the disciplinary hearing itself, it makes little practical sense that it would not also preclude the same person from reviewing the outcome of the hearing, with the power to overrule the hearing officer and thereby determine the ultimate disposition of both the charges and any associated punishment. Again, while we are cognizant that we must give appropriate deference to the CDCR's interpretation of its own governing regulations, we decline to read the plain language of section 3320(h) in a manner that would lead to such an absurd result. (See *In re Villa, supra*, 214 Cal.App.4th at p. 964; *Bates, supra*, 83 Cal.App.5th at pp. 920–921 [courts defer to an agency's interpretation or a regulation unless it " ' "flies in the face of the clear language and purpose" ' "].)

We acknowledge that the regulations require that the final review, or audit, is conducted by the CDO, who is typically a specific individual, unlike the designated SHO for a particular case. We are cognizant of the fact that our interpretation of section 3320(h) may preclude a sitting CDO from signing off on disciplinary actions that they may have been involved in prior to being designated CDO but note that the record before us does not indicate the frequency with which a situation like this may occur.

Likewise, we also recognize that the regulations require the CDO to fill other, additional roles related to the discipline of inmates. As a result, the CDO likely will encounter at least some portion of RVR's before the final

review stage. For example, the CDO may grant a written request to delay providing a copy of the classified RVR to an inmate. (See § 3320, subd. (a)(2)(C).) However, these actions are not related to an evaluation of the underlying charged offense in the same way as classifying the offense, or the other acts listed in section 3320(h) that disqualify an officer from participating in deliberations to determine guilt and the disposition of the charges.

As a final matter, Respondent points to two federal cases as support for his position that Dixon has not adequately alleged a due process violation, outside the context of section 3320. (See, e.g., *Bryant v. Marshall* (N.D.Cal., Dec. 29, 1993, No. C-92-3151 MHP) 1993 U.S. Dist. Lexis 18787 at pp.*13–*14; *Gomez, supra*, U.S. Dist. Lexis 5598 at pp. *5–*6.) These cases do not discuss or address the rule set forth in section 3320, nor do they address this specific scenario, in which a single officer both classified the offense and conducted the final review of the RVR as CDO. Rather, they consider whether the CDO in each case, under different factual scenarios, was sufficiently impartial under the due process federal standard. (See *Bryant*, at pp. *15–*16 [considering whether a prisoner's right to an impartial disciplinary hearing officer was violated when a prison warden that he had sued privately reviewed and affirmed the disciplinary action]; *Gomez*, at pp. *5–*6 [considering whether a prisoner's right to an impartial disciplinary hearing panel was violated by a single officer reviewing and affirming the action as the CDO and confirming the credit loss as chair of the initial classification committee].) As such, they do not guide our interpretation of the plain language of section 3320 in the context of the present case.

In sum, we conclude that section 3320(h) does preclude an officer from both classifying the asserted offense in an RVR and conducting the final

14

review of the RVR as CDO.  Because Hopper admittedly filled both roles in this case, he violated the statutory prohibition, and the final disciplinary hearing result must be vacated.

## III.   DISPOSITION

Let a writ of habeas corpus issue directing James Hill, warden of Richard J. Donovan Correctional Facility, to vacate the final disciplinary hearing result, dated July 16, 2023, finding a rule violation against inmate Brandon Dixon.  To the extent permissible under the applicable Regulations, the final review of the RVR shall be conducted anew by a CDO that is not disqualified under section 3320(h).  If the CDCR determines such review is not feasible or permissible, it shall restore Dixon's lost conduct credits and pay.  The order to show cause is discharged.


KELETY, J.


WE CONCUR:


IRION, Acting P. J.


CASTILLO, J.


15