Filed 7/1/13 (unmodifed opinion atttached)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ELVIN CABRERA,<br><br>On Habeas Corpus. | F059511<br><br>**ORDER MODIFYING**<br>**OPINION AND DENYING**<br>**REHEARING**<br>**(CHANGE IN JUDGMENT)** |

It is ordered that the published opinion filed herein on June 11, 2013, be modified as follows:

On page 21 the phrase "remove all documents related to the validation from Cabrera's prison file" is deleted from the "**DISPOSITION"** so the disposition now reads:

Let a writ of habeas corpus issue directing the California Department of Corrections and Rehabilitation to (1) void and expunge the 2008 validation of Elvin Cabrera as an associate of the Mexican Mafia prison gang, (2) report the expungement to all gang-related law enforcement databases and clearinghouses to which the original validation previously was reported, and (3) cease housing Cabrera in the security housing unit based on the gang validation.

This modification changes the judgment.

Respondent's June 26, 2013, petition for rehearing is denied.

_____
Franson, J.

WE CONCUR:


_____
Kane, Acting P.J.


_____
Poochigian, J.

Filed 6/11/13  Opinion following remand from Supreme Court (unmodified version)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ELVIN CABRERA,<br><br>    On Habeas Corpus. | F059511<br><br>**OPINION** |

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus.

Elvin Cabrera, in pro. per.; and Michael Satris, under appointment by the Court of Appeal, for Petitioner.

Kamala D. Harris, Attorney General, Jennifer A. Neill, Senior Assistant Attorney General, Jessica N. Blonien and Amy Daniel, Deputy Attorneys General, for Respondent.

**INTRODUCTION**

In 2008, the California Department of Corrections and Rehabilitation (CDCR) determined that inmate Elvin Cabrera was an associate of the Mexican Mafia prison gang (EME) based on his possession of photocopies of four drawings, two of which included part of the names of EME affiliates as the artists.[1]  Cabrera challenged his gang validation[2] in a petition for writ of habeas corpus.

---

[1]    In this opinion, the noun "affiliate" is used to include both gang members and gang associates.

[2]    "Validation" is the term given the process of identifying which inmates in California prisons are gang associates or members.  (See Cal. Code Regs., tit. 15, § 3378, subd. (c)(3), (4); *Madrid v. Gomez* (N.D.Cal. 1995) 889 F.Supp. 1146, 1241.)  All further regulatory references are to title 15 of the California Code of Regulations.

This court granted Cabrera's petition in a September 2011 opinion, but the California Supreme Court reversed, concluding our decision was based on an improper interpretation of the CDCR's regulation. (*In re Cabrera* (2012) 55 Cal.4th 683.) The Supreme Court remanded for further proceedings and directed us to resolve two issues, the first being: "Whether the evidence is sufficient, under the regulation as properly construed, to uphold the validation of Cabrera as a gang associate .…" (*Id*. at p. 692.)

Applying the deferential "some evidence" standard of judicial review, we conclude that two of the photocopied drawings, containing part of the names of EME affiliates as the artists, do not support a finding that Cabrera had an "association" (i.e., a loose relationship) with a gang-affiliate artist that constituted a "direct link" (i.e., a connection without interruption) as required by section 3378, subdivision (c)(4).

Cabrera therefore is entitled to the issuance of a writ of habeas corpus on that ground.[3]

## BACKGROUND

In February 2003, Cabrera was convicted of robbery, burglary, receiving stolen property and possession of drug paraphernalia. In April 2003, he was sentenced to a prison term of 62 years to life. Since 2003, Cabrera has been an inmate at the California Correctional Institution at Tehachapi (CCI). While at CCI, Cabrera was enrolled in a hobby craft program for nearly three years and possessed a large quantity of drawings from a variety of artists. Cabrera acknowledges that his artwork collection included the photocopies of drawings that CDCR relied upon to validate him as a gang associate.

---

[3] Because of this conclusion, we need not address the second issue remanded to us: "[W]hether the validation and placement in the SHU otherwise violates any of Cabrera's rights .…" (*In re Cabrera, supra,* 55 Cal.4th p. 692.)

On April 3, 2008, Hispanic inmates in yard 4-A were involved in an assault on prison staff. Cabrera was assigned to yard 4-A, but was in his cell at the time of the assault and was not involved in the incident.

Five days after the assault, prison officials conducted an operation named "Swift Response" that scrutinized every Hispanic inmate assigned to yard 4-A. Pursuant to the operation, Institutional Gang Investigator (IGI) E. Sanchez inspected the personal property of Cabrera, including Cabrera's collection of artwork. IGI Sanchez believed that four of the drawings were evidence of Cabrera's association with EME. He prepared three general chronos[4] dated April 8, 2008, to document the four drawings and the reasons he believed the drawings evidenced that Cabrera was associating with affiliates of EME.

Generally, CDCR regulations specify the evidence that can be used to identify or validate a California prisoner as a member or associate of a prison gang. Cabrera was validated as a gang associate, not a member. The regulatory foundation for validation as an associate is section 3378, subdivision (c)(4), which provides:

> "An *associate* is an inmate ... who is involved ... with members or associates of a gang. This identification requires at least three (3) *independent source items* of documentation *indicative of association* with validated gang members or associates. Validation of an inmate ... as an *associate* of a prison gang shall require at least one (1) source item be a *direct link* to a current or former validated member or associate of the gang ...." (Italics added.)

"[S]ource items" are defined in subdivision (c)(8) of section 3378, which lists various categories of "source items" that support a gang identification. In this case, only

---

[4] "General Chrono" is defined by the regulation as "a CDC Form 128-B (Rev. 4-74) which is used to document information about inmates and inmate behavior. Such information may include … records of disciplinary or classification matters …." (§ 3000.)

two types of source items were used—symbols and an inmate's association with validated gang affiliates.

Two of the general chronos prepared by IGI Sanchez concern drawings containing part of the names of EME affiliates Fermin Garcia and Fernando Bermudez, which CDCR determined established a "direct link" between Cabrera and these two affiliates of EME. The other two drawings were referenced in the third general chrono and were treated as a single source item of symbols indicative of Cabrera's affiliation with EME.

*Drawing by Associate Fermin Garcia*

The first drawing at issue was presumably made by Fermin Garcia, a prisoner validated as an associate of EME in 2003. The drawing contains a female Mesoamerican warrior holding the shaft of a spear in her left hand. A circular standard is mounted at the top of the shaft. "Matlactlomei" symbols appear at the three o'clock and nine o'clock positions on the standard. The matlactlomei consists of two vertical lines and a vertical column of three dots, which is the Mayan symbol for the number 13. Each line has a numerical value of five and each dot has a numerical value of one. Thus, the sum of the two lines and three dots is 13. Matlactlomei is translated to mean 13 within the Nahuatl language. The number 13 is used as a designation for EME because the 13th letter in the alphabet is "M." (See *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1544 [13 used to designate EME].)

The lower right hand corner of the drawing contains "FERMIN 00" printed in block letters. The double zeros mean that the drawing was completed in the year 2000. The general chrono relating to this drawing, prepared by IGI Sanchez, states that he "identified the person who drew the picture, as inmate Fermin Garcia, D-88896, aka Fox, a validated associate of … [EME], (*date of validation 7-15-2003*)."[5]

---

[5] We note that Fermin Garcia also was the artist who drew, signed and copyrighted the sketches on the greeting card that was one of the source items in *In re Villa* (2013)

4.

Immediately following the first paragraph of text in the general chrono, near the left-hand margin, is a two-inch by two-and-a-half-inch copy of the drawing. To the right of the drawing are two boxes for text. A line extends from the upper box to a matlactlomei symbol in the drawing. Another line extends from the lower box to "FERMIN 00." The text inside each box reads: "Direct link identified as Fermin Garcia D-88896."

The general chrono also contains a paragraph that explains how the matlactlomei represents 13 and, in turn, how 13 is used to designate EME. The third and final paragraph of the general chrono states: "This chrono (Direct link) should be used as one (1) source towards validating Cabrera as an associate of the prison gang known as the Mexican Mafia."

*Drawing by Member Fernando Bermudez*

The second drawing at issue contained the abbreviated name of Fernando Bermudez, a prisoner validated as a member of EME. The drawing assembles diverse elements or fragments, including a dragon, a jaguar's face, the face of a man in which the left half is a skeleton, a woman on a veranda with her head framed by a full moon, a chain, prison bars, and other components. None of the elements of the drawing were identified as being connected with or indicative of EME. At the bottom center of the drawing, the following letters are written: "F.BERMÚDEZ," with the "F" in a stylized form and "BERMÚDEZ" in block letters. The general chrono relating to this drawing, prepared by IGI Sanchez, states that he "identified the person who drew the picture, as

214 Cal.App.4th 954, 959. In that case, the court did not decide whether the greeting card was some evidence of a direct link between inmate Villa and Fermin Garcia. (*Id*. at p. 963, fn. 6.) The court did conclude that a confidential memorandum did not provide a direct link to a validated gang affiliate because the memorandum linked Villa to EME in general and not to a specific person who was a validated member or associate of that prison gang, as required by the regulation. (*Id*. at p. 972.)

inmate Fernando Bermudez B-53002, aka Angon Fidel, a validated member of …
[EME], (*date of validation 8-11-1995*).” It concludes: “This chrono (Direct link) should be used as one (1) source towards validating Cabrera as an associate of the prison gang known as the EME.”

*Drawings with Symbols*

The third general chrono prepared by IGI Sanchez concerns photocopies of two drawings that contain gang-related symbols. The first drawing shows a young woman wearing a sombrero and holding a revolver in her right hand. Parts of an eagle and serpent appear from behind the sombrero. Symbols are written on the brim of her sombrero with a matlactlomei representing the number 13 appearing near the center. The second drawing contains a female Mesoamerican warrior armed with a sword in her right hand, a shield on her left, and a bow and quiver of arrows slung over her back. Cabrera photocopied the drawing directly from a Low Rider magazine, one of many publications that are allowed to enter CCI by mail. The artist was Mary Trujillo, a participant in the magazine’s monthly art contest.

The third general chrono states that the “Eternal War Shield is located in the center of the female Aztec warrior chest area .… The Eternal War Shield is known through gang intelligence, to demonstrate loyalty to the Mexican Mafia as many of the members and associates identify themselves as being warriors of the EME.” In addition, it asserts that the matlactlomei and eternal war shield are used by members and associates of EME to show their loyalty and that “[b]oth these symbols are recognized by the department as being symbolic to membership/association with the Mexican Mafia.”

*Validation and Cabrera’s Administrative Appeals*

On May 13, 2008, CDCR validated Cabrera as an associate of EME based on the three general chrono’s prepared by IGI Sanchez. CDCR prepared a CDC Form 128-B-2 to document the validation and notify Cabrera of its decision.

6.

Cabrera pursued administrative appeals to challenge his validation. His appeals were denied at each of the three levels of CDCR's administrative review, with the last denial coming on December 31, 2008.

## PROCEDURAL HISTORY

In October 2009, Cabrera filed a petition for writ of habeas corpus in the Kern County Superior Court. The superior court denied the petition, concluding there were three valid sources of gang validation with two direct links to gang affiliates.

In February 2010, Cabrera filed a petition for writ of habeas corpus with this court. Subsequently, this court considered various submissions from the parties and issued an order to show cause why the relief requested should not be granted and directed the appointment of counsel for Cabrera.

Pursuant to the order to show cause, the Attorney General filed a return with supporting memorandum of points and authorities. Cabrera responded by filing a traverse and memorandum of points and authorities.

In September 2011, this court filed an opinion (1) interpreting the "association" and "direct link" requirements in section 3378, (2) concluding the gang validation was not supported by some evidence of a direct link between Cabrera and a validated gang affiliate, and (3) granting Cabrera's petition for writ of habeas corpus.

The California Supreme Court granted review. On October 29, 2012, the court filed an opinion that concluded "the Court of Appeal failed to accord due deference to the CDCR's interpretation of its own regulations." (*In re Cabrera*, *supra*, 55 Cal.4th at p. 686.) Based on this error, the Supreme Court reversed the judgment awarding Cabrera habeas corpus relief and remanded the matter to this court for further proceedings. (*Id*. at p. 693.) The Supreme Court directed us to resolve the following issues:

> "Whether the evidence is sufficient, under the regulation as properly construed, to uphold the validation of Cabrera as a gang associate .…"
> (*In re Cabrera*, *supra*, 55 Cal.4th at p. 692.)

7.

"[W]hether the validation and placement in the SHU otherwise violates any of Cabrera's rights …." (*In re Cabrera*, *supra*, 55 Cal.4th at p. 692.)[6]

## DISCUSSION

I. STANDARD OF JUDICIAL REVIEW OF THE SUFFICIENCY OF THE EVIDENCE

Our November 1, 2012, letter advised counsel that "in addressing the sufficiency of the evidence, this court will apply the 'some evidence' test used in *In re Furnace* (2010) 185 Cal.App.4th 649, 659, unless presented with a compelling argument to the contrary."

A. Contentions of the Parties

Cabrera's supplemental opening brief does not address the appropriate standard of review.

CDCR presents two arguments as to why the "some evidence" test does not apply to its validation decisions. First, CDCR contends that the due process clause does not apply to decisions to validate an inmate as a gang affiliate because the inmate has no protected liberty interest. Alternatively, CDCR contends that if the due process clause is implicated, the only procedural protections that apply are notice and an opportunity to be heard.

B. Due Process Requires Some Evidence to Support Validation Decision

*1. Gang Validation Precedent*

The United States Supreme Court has not addressed whether the due process clause creates a minimum standard for the sufficiency of the evidence used by prison officials to identify an inmate as a gang affiliate. Similarly, the California Supreme Court has not explicitly addressed the issue.

---

**6** See footnote 3, *ante*.

The California Supreme Court's decision in *In re Cabrera*, *supra*, 55 Cal.4th 683 could be interpreted as implying that there is a minimum evidentiary standard established by the due process clause because the court remanded to us the question whether the evidence was sufficient to uphold the gang validation of Cabrera. We conclude, however, that it would be inappropriate to read our Supreme Court's decision as impliedly deciding the question. The court explicitly stated that the question presented for its review was "very narrow." (*Id*. at p. 686.) This statement makes us reluctant to infer that the court decided other issues by implication.

At least three published decisions of the Courts of Appeal have addressed the standard that should be used to determine whether the evidence supporting a gang validation decision is sufficient to satisfy procedural due process. Those decisions identify the "some evidence" standard as the quantum of evidence necessary to satisfy the demands of due process. (*In re Villa, supra,* 214 Cal.App.4th 954, 962 [applied "some evidence" test]; *In re Fernandez* (2013) 212 Cal.App.4th 1199, 1207 [deferential "some evidence" standard applies to gang validations]; *In re Furnace, supra,* 185 Cal.App.4th at p. 659 [gang validation supported by "some evidence"]; cf. *In re Efstathiou* (2011) 200 Cal.App.4th 725, 733 [some evidence supported finding that prisoner chose to continue as active gang member after statutory amendment regarding denial of conduct credits].)

The "some evidence" test also has been applied by federal courts with jurisdiction in California. The Ninth Circuit Court of Appeals has applied that test to prisoner due process claims challenging a gang validation. (*Castro v. Terhune* (9th Cir. 2013) 712 F.3d 1304, 1307; *Bruce v. Ylst* (9th Cir. 2003) 351 F.3d 1283, 1287 [summary judgment in favor of prison officials on the due process claim upheld because gang validation was supported by "some evidence"]; see *Lopez v. Horel* (9th Cir. 2010) 367 Fed.Appx. 810 [evidence used to validate plaintiff as gang member met "some evidence" standard].) Federal district courts sitting in California have followed this precedent. (*Stewart v. Alameida* (N.D.Cal 2006) 418 F.Supp.2d 1154, 1167-1168 ["some evidence" standard

9.

applied to prisoner's claim that he was validated as a gang associate without adequate evidentiary support in violation of the due process clause].)  One court stated that a "prison gang validation proceeding is subject to the 'some evidence' standard where it is an administrative strategy rather than a disciplinary action.  [Citation.]"  (*Avina v. Crondagar* (E.D.Cal. May 14, 2010, No. 1:09-CV-00343-LJO-DLB) 2010 Lexis 47796.)

Based on the foregoing cases, we conclude that (1) the due process clause does address the sufficiency of the evidence supporting a gang validation under section 3378 and (2) the standard to be employed is extremely deferential—specifically, the administrative findings underlying the validation of an inmate as a gang affiliate must be supported by "some evidence."  (*In re Furnace*, *supra*, 185 Cal.App.4th at p. 659.)

### 2. *Description of Some Evidence Test*

The United States Supreme Court articulated the "some evidence" standard in *Superintendent v. Hill* (1985) 472 U.S. 445, a case involving the denial of good time credits that could have reduced the inmate's time in prison:

> "We hold that the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board ….  This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced ….'  [Citation.]  Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  (*Id*. at pp. 455-456, italics added.)

We believe the "evidence" the United States Supreme Court's reference to "evidence from which the conclusion of the administrative tribunal could be deduced" (*Superintendent v. Hill, supra,* 472 U.S. at p. 455) means evidence "having any tendency in reason to prove … [the] disputed fact .…"  (Evid. Code, § 210 [definition of "relevant evidence"].)  As for the meaning of "some evidence," the California Supreme Court has described the line between sufficient and insufficient evidence in a variety of ways.  For

10.

example, "some evidence" is the equivalent of "'a modicum of evidence to support a decision.'" (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 658, quoting *Superintendent v. Hill*, *supra*, at p. 455.)[7]  The court also referred to a decision without sufficient evidentiary support as "arbitrary and capricious." (*In re Lawrence* (2008) 44 Cal.4th 1181, 1205.)  In addition, the "some evidence" test means that there must be "a rational nexus" between the evidence presented and the finding of fact made. (*Id*. at p. 1227.)  In other words, a decision cannot be supported "merely by a hunch or intuition." (*Id*. at p. 1213.)

The some evidence "standard is unquestionably deferential, but certainly is not toothless …." (*In re Lawrence*, *supra*, 44 Cal.4th at p. 1210.)[8]  Application of this deferential standard "does not mean that courts simply rubber-stamp" the administrative decision. (*In re Ross* (2009) 170 Cal.App.4th 1490, 1503; *In re Singler* (2008) 169 Cal.App.4th 1227, 1239.)

## II.    VALIDATION UNDER SECTION 3378

### A.    Regulatory Text

Regulations promulgated by the Secretary of the CDCR specify the procedures and describe the evidence that can be used to identify or validate a California prisoner as a member or associate of a prison gang.  In this case, Cabrera was validated as a gang

---

[7]    "Modicum" means "a small portion : a limited quantity or amount." (Webster's 3d New Internat. Dict. (1993) p. 1452.)

[8]    *In re Lawrence* illustrates that the standard is not toothless because it is a case where an appellate court determined that the administrative decision under review was *not* supported by some evidence.  In that case, the Governor determined that the inmate posed a current threat to public safety and reversed the Board of Parole Hearings' decision to grant parole.  The court concluded that the unchangeable circumstances of the inmate's murder offense did not constitute "some evidence" of current dangerousness. (*In re Lawrence*, *supra*, 44 Cal.4th at p. 1227.)

associate, not a member. The regulatory foundation for validation as an associate is section 3378, subdivision (c)(4), which provides in full:

> "An *associate* is an inmate/parolee or any person who is involved periodically or regularly with members or associates of a gang. This identification requires at least three (3) *independent source items* of documentation *indicative of association* with validated gang members or associates. Validation of an inmate/parolee or any person as an *associate* of a prison gang shall require at least one (1) source item be a *direct link* to a current or former validated member or associate of the gang, or to an inmate/parolee or any person who is validated by the department within six (6) months of the established or estimated date of activity identified in the evidence considered." (Italics added.)

The reference to "source items" in this provision leads to subdivision (c)(8) of section 3378, which lists various categories of "source items" that support a gang identification. In this case, only two types of source items were used—symbols and association. The relevant parts of section 3378, subdivision (c)(8) provide:

> "The determination of a gang identification shall reference each independent source item in the inmate/parolee's central file. The sources shall be based on the following criteria: [¶] … [¶]

> "(B) Tattoos and symbols. Body markings, hand signs, distinctive clothing, graffiti, etc., which have been identified by gang investigators as being used by and distinctive to specific gangs. Staff shall describe the tattoo or symbol and articulate why it is believed that the tattoo or symbol is used by and distinctive of gang association or membership.… [¶] … [¶]

> "(G) Association. Information related to the inmate/parolee's association with validated gang affiliates. Information including addresses, names, identities and reasons why such information is indicative of association with a prison gang or disruptive group.…"[9]

Regarding the source items relied upon to validate an inmate, "[s]taff shall document and disclose this information to the inmate/parolee in a written form that would

---

[9] Other types of source items include an inmate's admission of involvement with a gang, written material, photographs, communications evidencing gang activity, and offenses reflecting gang affiliation. (§ 3378, subd. (c)(8).)

12.

not jeopardize the safety of any person or the security of the institution." (§ 3378, subd. (c)(8).)

Unlike the term "source items," the CDCR's regulations do not define the terms "direct link" or "independent." Furthermore, neither term is defined or explained in the settlement agreement pursuant to which the regulations regarding gang validation were amended.[10]

### B.    Interpretation of Regulatory Terms

#### 1.    Direct Link

We accepted the CDCR's definition of a "direct link" as "encompassing a connection [i.e., the link] that is "'without interruption or diversion" and "without any intervening agency or step."'" (*In re Cabrera*, *supra*, 55 Cal.4th at p. 690.) Because this interpretation was approved by the California Supreme Court and has been used by this court in an earlier published opinion, we will apply this interpretation of the "direct link" requirement in this case. (See *In re Furnace*, *supra*, 185 Cal.App.4th at p. 661 [dictionary definition of "direct" used to define "direct link"].)

---

**10**    Sections 3341.5 and 3378 were amended by CDCR pursuant to the terms of a class action settlement agreement in *Castillo v. Alameida* (N.D.Cal. 2004, No. C 94-2847 MJJ). The class action began in 1994 and the settlement agreement was executed on September 23, 2004. (*Garcia v. Stewart* (N.D.Cal. Mar. 16, 2009, No. C 06-6735 MMC) 2009 U.S.Dist. Lexis 20886, at p. 8; Note, *Resistance and Repression: The Black Guerrilla Family in Context* (2012) 9 Hastings Race & Poverty L.J. 167, 181.)

Prior to the amendments adopted pursuant to the settlement agreement, the CDCR's operations manual addressed the direct link requirement. The court in *Madrid v. Gomez* (N.D.Cal. 1995) 889 F.Supp. 1146 quoted the manual in the following statement: "At least one of the three sources must be a direct link to a validated member, such as 'a validated member or former member identifying the inmate/parolee as an associate; correspondence with a validated member; photographed with a validated member; staff or informant observations of being in company with a validated member; identified as an associate by a validated associate who has a documented direct link; etc.' DOM § 55070.19.3." (*Id.* at p. 1242, fn. 188.)

13.

## 2. Association

We also accept the CDCR'S definition of an "association with validated gang affiliates" (§ 3378, subd. (c)(8)(G)) to mean "'a "loose relationship as a partner, ... colleague, friend, companion, or ally" with a validated gang affiliate.'" (*In re Cabrera, supra,* 55 Cal.4th at p. 690; see Webster's 3d New Internat. Dict. (1993) p. 132 [definition of verb "associate"].) The California Supreme Court considered CDCR's interpretation of the term "association" under subdivision (c)(8)(G) of section 3378 and concluded it was a reasonable interpretation. (*In re Cabrera*, *supra*, at p. 686, fn. 1.) Consequently, CDCR's definition of "association" is the one that we will apply in this case.

With the foregoing regulatory provisions and definitions in mind, we turn to the evidence relied upon by CDCR to establish that Cabrera had "a direct link to a current or former validated member or associate of the gang .…" (§ 3378, subd. (c)(4.)

## III. EVIDENCE OF A DIRECT LINK BY ASSOCIATION

The evidence relied upon by CDCR to find that Cabrera had a direct link to a gang affiliate is not complex. It consists of Cabrera's possession of photocopies of two drawings, each of which was drawn by an EME affiliate and contained a part of that artist's name.

Early in this proceeding, this court had questions regarding the nature and scope of the evidence relied upon by CDCR. Consequently, we directed the Attorney General to file a supplemental informal response stating (1) the basis upon which IGI Sanchez determined that the drawings containing the name of an EME affiliate provided a direct link, (2) whether any of the subject drawings contained an original signature, and (3) what information was available regarding how Cabrera came into possession of the subject drawings.

In a letter dated September 20, 2010, the Attorney General provided the following answers to these questions. First, "[p]ossession of the drawings containing the signatures

14.

of the validated members or associates is enough to demonstrate the direct link under section 3378." Second, the documents obtained from Cabrera were photocopies of drawings and, therefore, the IGI was unable to confirm that the signatures were original. Third, information regarding the manner in which Cabrera obtained the drawings containing the name of a gang affiliate was unavailable. To summarize these responses, the only information available was that Cabrera was in possession of the photocopies and the photocopies contained part of the name of gang affiliates, which name might, or might not, have been placed on the original drawing by the artist.

A. Contentions of the Parties

1. *Cabrera's Contentions*

Cabrera contends that the evidence fails to demonstrate a "direct link" between himself and Fernando Bermudez or Fermin Garcia, the gang affiliates who allegedly drew pictures included among the photocopies in Cabrera's possession.

Cabrera argues that the intervening step of the photocopying of the drawings negates any direct link between Cabrera and the artists. Applying the definition that a direct link is a connection without interruption or diversion and without any intervening agency or step, Cabrera argues that photocopying is an intermediate step that renders indirect any possible link between him and artists incarcerated at another CDCR facility.

2. *CDCR's Contentions*

The Attorney General's September 20, 2010, letter, which answered our questions about the evidence relied upon by IGI Sanchez, asserted that the "link between the signatures and Cabrera are evident without the addition of some further step or information." Thus, in the Attorney General's view, how Cabrera obtained the drawings was irrelevant to the question whether the drawings constitute a direct link.

Approximately four months later, CDCR's January 2011 return used the definition of direct link discussed earlier in this opinion and argued: "As was the case in *Furnace*,

the information contained on the drawings connects Cabrera to the gang member or associate without the addition of some further step or information; the connection is evident from the face of the document.  ([*In re Furnace*, *supra*, 185 Cal.App.4th] at p. 662.)"

In January 2013, after remand from the California Supreme Court, CDCR filed a supplemental respondent's brief contending that "direct link" is "a broad, flexible term that does not require anything more than a straight-forward connection."  That brief also argues:  "The connection is direct in that Cabrera personally possessed the affiliates' drawings.  [Citation.]  Nothing more is needed to create a direct link.  [Citations.]  A showing of an interactive relationship is not needed.  [Citation.]  Additionally, the direct link itself is not required to be independently indicative of gang association—a direct link is shown by any form of straight-forward connection."

### B.      Case Law Applying Some Evidence Standard to Direct Link Finding

As stated earlier, we will assess the sufficiency of the evidence by applying the "some evidence" standard.  (*In re Fernandez*, *supra*, 212 Cal.App.4th at p. 1207.)

Two recent cases involving the direct link requirement provide examples where the "some evidence" standard was not met.  In *In re Villa*, *supra*, 214 Cal.App.4th 954, the court concluded that the confidential memorandum was not some evidence that inmate Villa had the requisite direct link.  (*Id*. at p. 972.)  The court indicated that the memorandum provided evidence that Villa had a direct link to the Mexican Mafia in general, but failed to show that he had a direct link to a specific person affiliated with the gang.  (*Ibid*.)

In *In re Fernandez*, *supra*, 212 Cal.App.4th 1199, the court considered whether a confidential debriefing report of a validated member of the Northern Structure prison gang provided evidence of a direct link between inmate Saldana and a member or associate of the gang.  (*Id*. at p. 1212.)  The court stated that it reviewed the confidential debriefing report itself and concluded it was inadequate.  (*Id*. at p. 1213.)  The report

16.

simply described Saldana as an associate, but failed to describe the nature of his involvement with the gang. (*Ibid*.) In particular, the report (1) did not mention any specific acts or incidents involving Saldana, (2) made no mention of Saldana serving a particular role or job for the gang, and (3) did not "otherwise describe how Saldana interacted with [Northern Structure] members or was otherwise involved with the [gang]." (*Ibid*.) Consequently, the court concluded that the confidential material did not constitute some evidence that Saldana had a direct link to an affiliate of the Northern Structure prison gang. (*Ibid*.)

In contrast to these 2013 cases, our decision in *In re Furnace*, *supra*, 185 Cal.App.4th 649 provides an example of a case where the CDCR's finding of a direct link was supported by some evidence. In that case, inmate Furnace was found in possession of (1) a piece of paper with the name, CDCR number, and institutional housing of a validated member of the Black Guerrilla Family (BGF) prison gang housed at Pelican Bay State Prison, (2) a book written by George L. Jackson, the person who provided the example and teachings used as the basis for the BGF ideology, (3) an audio compact disc about the life, death and ideology of George L. Jackson, (4) a photocopied flyer promoting a 2005 Black August event in Oakland, California, and (5) a photocopied newspaper article explaining the meaning of Black August. (*Id*. at pp. 654-655.) We concluded that the piece of paper with the gang member's contact information (i.e., name, CDCR number and institutional housing) was the source item that satisfied the requirement for a direct link between the inmate and a validated gang member. (*Id*. at p. 661.)

In concluding that the evidence in *In re Furnace* supported a finding of a direct link, we relied on the contents of the piece of paper with the specific contact information of a validated gang member, Furnace's statement that he was going to contact the inmate as research for a children's book he was writing on staying away from gangs and prison, and the inclusion of the inmate's name in an article explaining Black August. (*In re*

17.

*Furnace*, *supra*, 185 Cal.App.4th at pp. 655, 661.) This evidence showed that Furnace knew the inmate identified on the piece of paper was a gang member and had a significant role in the BGF. We held that the evidence showing Furnace knew that the other inmate was a gang member together with Furnace's possession of the gang member's contact information was sufficient under the "some evidence" test to establish a direct link between the inmate and the gang member. (*Ibid.*)

Similarly, in *Castro v. Terhune*, *supra*, 712 F.3d 1304, the court concluded there was some evidence that the inmate had direct links to gang affiliates in satisfaction of section 3378, subdivision (c)(4). (*Id.* at p. 1309, fn. 1.) One of the direct links was established by a hand-drawn birthday card for a validated Mexican Mafia associate. The card had been signed and sent by inmate Castro, other prisoners who either were validated Mexican Mafia associates or suspected associates of the gang and, conversely, the card was not signed by other inmates who resided in the same cell area, but were not part of the Mexican Mafia. The court stated that the evidence showed that Castro had collaborated with validated gang associates to send the birthday card to another validated gang associated. Thus, *Castro v. Terhune* is distinguishable from the instant case because there was ample evidence of inmate Castro's personal involvement in gang activity and communication with gang affiliates.[11]

C.      Analysis of Evidence of a Direct Link by Association

Applying the definitions of "direct link" and "association" approved by our Supreme Court and used by CDCR, some evidence must support a finding that (1) Cabrera had a loose relationship as a partner, colleague, friend, companion or ally with the artists (i.e., an association) and (2) at least one of the relationships constituted a

---

[11]      In addition, debriefing reports indicated that Castro was the gang member who supervised a portion of the prison and also indicated he was involved in a gang-related plot to stab another inmate.

18.

connection to the artist that was without interruption or any intervening agency or step (i.e., a direct link).

In assessing the sufficiency of the evidence, we acknowledge the Supreme Court's conclusion that proof of an inmate's direct link to a validated gang affiliate based on an "association" with the gang affiliate does not require evidence of reciprocal (*i.e.*, mutual or two-way) interaction between the inmate and the validated gang affiliate. (*In re Cabrera*, *supra*, 55 Cal.4th at pp. 691-692.)

Because the only evidence in this case is Cabrera's possession of photocopies of two drawings, each of which was drawn by an EME affiliate and contained a part of that artist's name, CDCR argues that Cabrera's personal possession of the gang affiliates' drawings establishes a connection between Cabrera and the artists that is direct and nothing more is needed to create a direct link.

At oral argument, the following hypothetical was presented to counsel for CDCR. Suppose an inmate author or artist gives an item to inmate B, who gives it to inmate C, who gives it to inmate D, who gives it to inmate E, who crumples it up and throws it in the prison yard. Suppose further that Cabrera comes by and says "what's this" and then picks it up and takes it to his cell. Counsel for CDCR asserted that, so long as the item was a source item, Cabrera's possession of the item is direct and is sufficient to establish a direct link to the artist.

We conclude that Cabrera's possession of part of a gang affiliate's name on a drawing created by that gang affiliate is not some evidence that Cabrera had a loose relationship with the artist that formed a connection between Cabrera and the artist that was without interruption or any intervening agency or step.

To satisfy the some evidence test, there must be "a rational nexus" between the evidence presented and the findings of fact. (*In re Lawrence*, *supra*, 44 Cal.4th at p. 1227.) The gap between the evidence and the findings cannot be bridged "merely by a hunch or intuition." (*Id*. at p. 1213.)

19.

In *In re Furnace, supra*, 185 Cal.App.4th 649 there was a rational nexus between the evidence and the finding that a connection without interruption or diversion and without any intervening agency or step existed. Furnace possessed the gang member's full name and his contact information. In addition, Furnace knew of the gang member's affiliation with the gang. In contrast, there is no evidence that Cabrera knew who "FERMIN" or "F.BERMÚDEZ" were, much less that he knew Fermin Garcia was an EME associate or Fernando Bermudez was an EME member. Also, there is no evidence that Cabrera knew how to contact them. We recognize that the application of the "some evidence" test does not *necessarily* require that evidence of this type of knowledge be presented and that evidence of other facts could be sufficient to demonstrate a direct link. Nonetheless, we have referred to evidence regarding contact information and the validated inmate's knowledge as an example of evidence that is *sufficient* to create a rational nexus (i.e., more than a hunch) for the finding that a connection without interruption exists.

Here, there is no rational nexus between an inmate's possession of a photocopied drawing bearing the partial name of the artist and the ultimate determination that the inmate had a loose relationship with the artist that constituted a connection without interruption or any intervening agency or step. Instead, the leap from the evidence to the conclusion that a direct link exists is based on speculation or a hunch.

The speculative nature of the direct link between Cabrera and the artists is illustrated in part by the following example. Suppose someone had a photocopy of a painting signed by David Hockney, a watercolor signed by Adolf Hitler, or a Peanuts cartoon containing Charles M. Schulz's signature. Mere possession of such photocopies would not justify inferring that the person had a loose relationship constituting a direct link to Hockney, Hitler or Schulz. Further information is necessary to rationally reach a conclusion that such a connection exists. Similarly, a prisoner's possession of a photocopied drawing bearing part of another inmate's name does not provide a finder of

20.

fact with sufficient evidence to determine that the prisoner has a loose relationship constituting a direct link with the artist. More information is necessary —without additional information, finding a direct link is present amounts to speculation or conjecture.

Therefore, we conclude that the evidence relied upon by CDCR in this case does not constitute some evidence of a direct link under the regulatory category of association. (§ 3378, subd. (c)(4) & (8)(G).)

## DISPOSITION

Let a writ of habeas corpus issue directing the California Department of Corrections and Rehabilitation to (1) void and expunge the 2008 validation of Elvin Cabrera as an associate of the Mexican Mafia prison gang, (2) report the expungement to all gang-related law enforcement databases and clearinghouses to which the original validation previously was reported, (3) remove all documents related to the validation from Cabrera's prison file and (4) cease housing Cabrera in the security housing unit based on the gang validation.

_____
Franson, J.

WE CONCUR:


_____
Kane, Acting P.J.


_____
Poochigian, J.

21.