Filed 12/10/13  Modified and certified for publication 1/8/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re MANUEL ALVAREZ<br><br>On Habeas Corpus. | F063995<br><br>**OPINION** |

ORIGINAL PROCEEDING; petition for writ of habeas corpus.

Michael Satris, under appointment by the Court of Appeal, for Petitioner.

Kamala D. Harris, Attorney General, Jennifer A. Neill, Assistant Attorney General, Julie A. Malone and Pamela B. Hooley, Deputy Attorneys General, for Respondent.

## INTRODUCTION

"Prison regulations promulgated by California's Department of Corrections and Rehabilitation (CDCR) set forth the procedures and substantive requirements for validating an inmate as a member or associate of a prison gang.  Because gangs 'present a serious threat to the safety and security of California prisons' [citation], validation of an inmate as a gang member or associate can result in the inmate's placement in a security housing unit (SHU)."  (*In re Cabrera* (2012) 55 Cal.4th 683, 685-686 (*Cabrera*).)

Petitioner Manuel Alvarez, an inmate serving a determinate term in CDCR, was validated as an associate of the Northern Structure prison gang, and housed in the SHU.

As we will explain, an associate of a prison gang is "an inmate ... who is involved periodically or regularly with members or associates of a gang…." (Cal. Code Regs., tit. 15, § 3378, subd. (c)(4).)[1] Validation of an inmate as an associate requires at least three "independent source items of documentation indicative of association" with validated gang members or associates, and at least one source item must be a "direct link" to a current or formerly validated member or associate. (*Ibid.*) With one exception not applicable to this case, the regulatory definitions of the requisite "source items" do not include any restrictions on the date of the materials used as source items. (§ 3378, subds. (c)(8)(A)-(c)(8)(M).)

The regulatory provisions separately define a currently active member or associate based on whether there is evidence of "*any* documented gang activity *within the past six (6) years ....*" (§ 3378, subd. (c)(1); § 3341.5, subd. (c)(6), italics added.) An active member or associate who has been placed in the SHU may be transferred to a less restrictive housing unit if the inmate is determined to be inactive—defined as whether the inmate "has not been involved in gang activity *for a minimum of six (6) years….*" (§ 3341.5, subd. (c)(5); § 3378, subd. (e), italics added.)

In addition to these definitional provisions, the regulations further provide that "the identification of an inmate/parolee as a currently active gang member or associate [must be] supported by at least three independent source items …" (§ 3378, subd. (c)(2)), and "a validated prison gang member or associate … will be placed in a SHU for an indeterminate term" (§ 3341.5, subd. (c)(2)(A)(2)).

### *Order to show cause*

In the instant case, we issued an order to show cause (OSC) to address petitioner's argument that CDCR violated these regulatory provisions when it validated him as a

---

[1] All further citations are to the provisions of title 15 of the California Code of Regulations, unless otherwise indicated.

2.

currently active associate of a prison gang, and placed him in the SHU, because one of the three source items was more than six years older than his validation date. Petitioner argues all three source items must be based on gang involvement which occurs within six years of his validation date. Respondent, the Attorney General, argues there is no date or time restrictions on the source items used to validate an inmate as a member or associate, and only one source item must demonstrate gang activity within six years to classify an inmate as a currently active associate who must be housed in SHU.

We will conclude that the regulatory structure provides for validation of an inmate as a prison gang member or associate based on three independent source items, without any time restrictions on those source items except for photographs. We will also conclude that a validated member or associate is only subject to housing in the SHU for an indeterminate term if that gang affiliate is currently active, and that current activity is demonstrated if only one of the three source items shows documented gang activity within the past six years. (§ 3378, subd. (c)(1).) As applied to this case, two of the three source items used to validate and classify petitioner as a current active associate showed his gang activity within the past six years. We will therefore deny petitioner's petition for writ of habeas corpus.

### FACTS

In October 2008, petitioner pleaded no contest in the Superior Court of Santa Clara County to possession for sale of methamphetamine (Health & Saf. Code, § 11378); transportation, sale, and distribution of methamphetamine (Health & Saf. Code, § 11379, subd. (a)); false personation (Pen. Code, § 529); misdemeanor possession of narcotics paraphernalia (Health & Saf. Code, § 11364); and misdemeanor resisting an officer (Pen. Code, § 148, subd. (a)(1)). He admitted one prior strike conviction (Pen. Code, § 667, subds. (b)-(i); three prior prison term enhancements (Pen. Code, § 667.5, subd. (b)) and one prior narcotics conviction (Health & Saf. Code, § 11370.2, subd. (c)). Petitioner was sentenced to seven years four months.

3.

**Validation as a prison gang associate**

As of 2009, petitioner was incarcerated at CDCR, Sierra Conservation Center (SCC) in Jamestown, Tuolumne County.

On April 5, 2010, petitioner was advised by CDCR's Office of Correctional Safety that he had been validated as an associate of the NS prison gang, based on three source items: confidential memos dated October 1, 2003; January 8, 2010; and January 11, 2010. Petitioner was advised that an "active/inactive review" of his status would be held on January 11, 2016.

**Redacted summary of the three source items**

As is customary in the validation setting, petitioner was not given full access to the confidential source items used to validate him as an associate. Instead, he was given redacted summaries of the information used.

The first source item was a confidential memorandum, dated October 1, 2003, which identified petitioner as an associate of the NS. According to the redacted summary, petitioner's name, CDC identification number, moniker, and home town were discovered on a roster of inmates in good standing with the Northern Structure at the prison. The inmates were identified as individuals upholding and abiding by all the rules and regulations imposed and enforced by the members and associates of the Northern Structure.[2]

The second source item was a confidential memorandum, dated January 8, 2010, which identified petitioner as an associate of the Northern Structure. According to the redacted summary, the gang investigative staff obtained written materials which were

---

[2] As we will explain, the instant writ petition solely addresses petitioner's objections to the October 1, 2003, source item because it is more than six years from his validation date of April 5, 2010. The question of whether petitioner's validation is supported by "some evidence," based on the entirety of the three source items, is not before this court. (See, e.g., *In re Fernandez* (2013) 212 Cal.App.4th 1199, 1207.)

discovered secreted in the body of a suspected Northern Structure member. The written materials contained a detailed list of inmates considered associates of the gang in good standing, one of whom was already a validated associate; a status report of the prison; and instructions on how incoming inmates, affiliated with Northern Structure, should report to administrative segregation after committing an assault. Petitioner's name and identification information appeared on this list of associates.

The third source item was a confidential memorandum, dated January 11, 2010, which identified petitioner as a member of the Northern Structure. A self-admitted member of the Northern Structure identified petitioner as an associate who upheld the gang's rules and/or policies.

During the validation process, petitioner was interviewed regarding the three source items, based on the redacted summaries. He objected to the information which was disclosed, and denied he was an associate of the Northern Structure.

## Placement in SHU

On May 13, 2010, the Institutional Classification Committee advised petitioner he was presumed a threat to security and would be transferred to the SHU, based on his validation as an associate of the Northern Structure. As a result, CDCR denied petitioner time credits pursuant to Penal Code section 2933.6.[3]

---

[3] Effective January 25, 2010, Penal Code section 2933.6, subdivision (a) was amended to read: "Notwithstanding any other law, a person who is placed in a Security Housing Unit … upon validation as a prison gang member or associate is ineligible to earn [sentence reduction conduct] credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit,…" (See *In re Sampson* (2011) 197 Cal.App.4th 1234, 1240 [prospective application of amendment does not violate prohibition against ex post facto laws]; *In re Efstathiou* (2011) 200 Cal.App.4th 725, 731-734 [prospective application of amendment does not violate procedural due process].)

**Administrative appeals**

Petitioner challenged his validation and SHU placement through the CDCR administrative appeal process. At the first and second levels of review, petitioner argued he was improperly validated as an active associate because the regulations define currently active as any documented gang activity within the last six years, but the October 1, 2003, source item was more than six years older than his validation date of April 5, 2010. Both appeals were denied because petitioner improperly relied on regulatory provisions which addressed inactive or debriefed gang members.

At the director's level, petitioner again asserted he was inappropriately validated as an active associate of the Northern Structure because one of the source items was more than six years older than his validation date. His appeal was again denied and his six-year argument was rejected.

**Petition for writ relief in Superior Court**

On July 8, 2011, petitioner filed a petition for writ of habeas corpus with the Superior Court of Tuolumne County. He raised several challenges to his validation, including the argument that the October 1, 2003, confidential memo was improperly used as a source item because it was more than six years old. On August 25, 2011, the superior court denied the petition but did not address the six-year issue.

**WRIT PROCEEDINGS IN THIS COURT**

On January 5, 2012, petitioner filed a petition for writ of habeas corpus with this court (F063995), which is the subject of this matter. Petitioner raised several issues, including the argument that the confidential memo of October 1, 2003, could not be used as one of the source items used to validate him as an active member of the Northern Structure because it was more than six years old when he was validated on April 5, 2010.

On February 23, 2012, respondent filed an informal response, and argued the "age of an item is irrelevant to whether it is a proper source demonstrating that an inmate is a

6.

gang affiliate; the age is only relevant when considering whether that inmate is active with his gang and, therefore, should be housed in a Security Housing Unit."

On April 26, 2012, petitioner filed a reply and challenged all aspects of the three source items used to validate him as an associate of the Northern Structure, including arguments that he had not raised or exhausted in his administrative appeals.

**This court's order to show cause and briefing order**

On August 15, 2012, this court issued an order to show cause (OSC), returnable before this court, on why the relief requested should not be granted. In doing so, we directed the parties to respond to a series of questions limited to the validation of an inmate as a prison gang member or associate, classification as currently active or inactive, and whether all or some of the source items must demonstrate the inmate's gang involvement within six years of his validation. The parties filed appropriate briefing and responded to this court's questions. We will address their arguments in the course of our analysis.

**Declaration from J. Beeson**

As an exhibit to respondent's return, the Attorney General submitted a declaration from J. Beeson, a special agent in CDCR's Office of Correctional Safety. Beeson declared that his duties included the determination of whether an inmate should be validated as a prison gang member or an associate, and whether that inmate was active or inactive. Beeson declared that based on the regulatory criteria, there were no date restrictions on the three source items used to validate an inmate as either a member or an associate, with the exception of photographs, which must be no more than six years old.

Beeson further declared that the classification of an inmate as either active or inactive was "only relevant for purposes of his housing" in either SHU or a less restrictive confinement. According to Beeson, an inmate was active with his gang if there was any evidence of gang activity within the last six years. Beeson declared that when an inmate is initially validated, he will be classified as active and housed in the

7.

SHU "if any one of the requisite three source items reflects gang affiliation within the past six years." If all of the source items are more than six years old, then the inmate would be validated as either a member or associate, but classified as inactive and not subject to SHU placement.

As for the instant case, Beeson declared petitioner was properly validated as an associate based on the three source items. Since two of the source items showed he was active in 2010, he was classified as an active associate and subject to SHU placement.[4]

## DISCUSSION

We issued the OSC to ascertain whether there are date restrictions on the source items required to validate an inmate as a currently active prison gang member or associate. Issuance of an order to show cause implies a preliminary determination the petitioner has made a sufficient prima facie showing of specific facts that, if established, entitle him or her to relief. (*In re Large* (2007) 41 Cal.4th 538, 549.) Accordingly, petitioner now "bears the burden of proving, by a preponderance of the evidence, the facts on which his claim depends. [Citation.]" (*Ibid.*) Where the resolution of the petition does not depend on disputed issues of fact, a court may grant or deny the relief sought without ordering an evidentiary hearing. *(In re Zepeda* (2006) 141 Cal.App.4th 1493, 1497.)

### A.    Review of Validation Determination

The deferential "some evidence" test applies to judicial review of the CDCR's validation of an inmate as a member or an associate of a prison gang. (*In re Furnace* (2010) 185 Cal.App.4th 649, 659.) The requirements of due process "are satisfied if some evidence supports the decision of the prison disciplinary board...." (*Superintendent v. Hill* (1985) 472 U.S. 445, 455.)

_____

[4] As a result of Beeson's declaration, petitioner filed a motion for leave to depose Beeson to dispute and challenge his interpretation of the gang regulations. Respondent filed opposition. We will deny the petitioner's motion.

8.

In this case, however, we are not reviewing the sufficiency of the three source items to determine if the validation decision is supported by "some evidence." (Cf. *In re Furnace*, *supra*, 185 Cal.App.4th at pp. 659-660; *In re Villa* (2013) 214 Cal.App.4th 954, 961-962.) While petitioner raised several issues in his petition before this court, we issued the OSC and ordered briefing limited to whether the provisions of title 15 of the California Code of Regulations require that all three source items used to validate an inmate as a currently active gang member or associate must be based on evidence of "any documented gang activity within the past six (6) years …." (§ 3378, subd. (c)(1).)[5]

This determination requires review of the pertinent regulatory provisions. " 'The Legislature has given the Director of the [CDCR] broad authority for the discipline and classification of persons confined in state prisons. [Citations.] This authority includes the mandate to promulgate regulations governing administration, classification and discipline.' [Citation.] One such classification is that of prison gang member or associate of a prison gang. Inmates are prohibited from knowingly promoting or assisting gangs because the CDCR has decreed that gangs 'present a serious threat to the safety and security of California prisons.' [Citations.]" (*In re Villa*, *supra*, 214 Cal.App.4th at p. 961; accord, *Cabrera*, *supra*, 55 Cal.4th at p. 688.)

" ' "The courts exercise limited review of legislative acts by administrative bodies out of deference to the separation of powers between the Legislature and the judiciary, to the legislative delegation of administrative authority to the agency, and to the presumed

---

**5** Petitioner exhausted his administrative appeals solely on the claim that the October 1, 2003, confidential memorandum could not be used as one of the source items for validation because it was more than six years old. Petitioner later tried to file administrative appeals that challenged the sufficiency and validity of the other two source items, and CDCR's decision to deny him time credits under Penal Code section 2933.6. Both appeals were rejected as untimely, and he did not exhaust his administrative remedies as to those issues.

9.

expertise of the agency within its scope of authority." ' [Citation.]" (*Cabrera*, *supra*, 55 Cal.4th at pp. 687-688.)

The California Supreme Court has explained that in interpreting the prison gang validation regulations, " '[a]s a general matter, courts will be deferential to government agency interpretations of their own regulations, particularly when the interpretation involves matters within the agency's expertise and does not plainly conflict with a statutory mandate.' [Citation.] The question of how best to identify gang affiliates in the prison setting 'is a judgment call, and we will not disturb the agency's determination without a demonstration that it is clearly unreasonable.' [Citation.]" (*Cabrera*, *supra*, 55 Cal.4th at p. 690.)

Petitioner contends that all three source items required to validate an inmate as a currently active prison gang member or associate must demonstrate the inmate's gang activity within six years of the validation, and the October 1, 2003, confidential memo could not be used as one of those source items since it was not based on gang activity within six years.

Respondent asserts that petitioner was properly validated as an associate based on all three source items, there are no date restrictions on source items used for validation, and he was properly classified as a currently active associate since the regulations only require one of the three source items demonstrate *any* gang activity within six years of his validation. In support of this argument, respondent cites to Mr. Beeson's declaration as to CDCR's interpretation of the relevant regulatory provisions, and argues that *Cabrera* requires this court to defer to CDCR's interpretation.

In resolving this question, we acknowledge the California Supreme Court's direction to accord deference to CDCR's interpretation of the governing regulations in matters that fall within its expertise, particularly the identification of gang affiliates. (*Cabrera*, *supra*, 55 Cal.4th at p. 688.) However, we are still compelled to independently review the "plain language" of the regulations to determine whether CDCR's

10.

construction of the regulatory structure was "clearly unreasonable" in order to resolve the question before this court. (*Id.* at pp. 690-691.)

While this case was pending, we requested supplemental briefing from the parties regarding several of the disputed regulatory provisions. In its response, respondent addressed the particular issues raised in our briefing letter, but chided this court for focusing on "leaves in the forest," and added that we "should not interfere" with the difficult task of validating prison gang members, "which has been entrusted to CDCR's expertise." Respondent's dismissive comment appears based upon the supposition that the judicial branch must be a rubber stamp for CDCR's operational decisions, a view that is not shared by the California Supreme Court. *Cabrera* held the reviewing court must "accord due deference to the CDCR's interpretation of its own regulations,…" (*Cabrera, supra*, 55 Cal.4th at p. 686.) However, it also held the agency's construction of its regulations must not be "clearly unreasonable," and the reviewing court must still determine whether the validation determination is supported by "sufficient" evidence, and whether the validation and placement of the inmate in the SHU "otherwise violates any of [the inmate's] rights." (*Id.* at pp. 691, 692; see *In re Cabrera* (2013) 216 Cal.App.4th 1522, 1525-1526.)

We thus turn to the provisions of sections 3378 and 3341.5 to resolve the disputed questions before this court.[6]

## B. Verification Categories

We begin with section 3378, which is "a quasi-legislative rule promulgated by the CDCR to identify and manage inmates with a prison-gang affiliation." (*Cabrera*, *supra*,

---

[6] "Sections 3341.5 and 3378 were amended by CDCR pursuant to the terms of a class action settlement agreement in *Castillo v. Alameida* (N.D.Cal., 2004, No. C 94-2847 MJJ).…" (*In re Cabrera*, *supra*, 216 Cal.App.4th at p. 1534, fn. 10.) This settlement agreement, however, does not further define the terms and phrases at issue in this case.

11.

55 Cal.4th at p. 688.)  It first states that "[a]ny information regarding an inmate/parolee which is or may be critical to the safety of persons inside or outside an institution shall be documented as required" on the appropriate version of CDC Form 812, including CDC Form 812-A, "Notice of Critical Information—Prison Gangs Identification," and CDC Form 812-B, "Notice of Critical Information—Disruptive Group Identification." (§ 3378, subd. (a).)[7]

Section 3378 further provides that gang involvement allegations shall be investigated by a gang coordinator/investigator or appropriate designee.  (§ 3378, subd. (c).)  During such an investigation, CDC Forms 812-A or 812-B "shall be completed" if the following information is discovered:

> "[I]f an inmate/parolee has been verified as *a currently active member/associate*, *inactive member/associate or dropout of a gang* (prison gang or disruptive group) .…"  (§ 3378, subd. (c)(1), italics added.)

Section 3378, subdivision (c)(1) thus defines five possible prison gang verifications for an inmate/parolee:  (1) currently active member, (2) currently active associate, (3) inactive member, (4) inactive associate, or (5) dropout.

### C.    Prison Gang Members and Associates

We next turn to section 3378's provisions on how an inmate is validated either as a prison gang "member" or "associate."  A gang "member" is "an inmate/parolee or any person who has been accepted into membership by a gang…."  (§ 3378, subd. (c)(3).)  A gang "associate" is defined as "an inmate/parolee or any person who is involved periodically or regularly with members or associates of a gang…."  (§ 3378, subd. (c)(4).)

The type of proof required to validate an inmate as a member or an associate is virtually identical.  It requires "*at least three (3) independent source items of*

---

[7] CDC Form 128-B is also known as a "General Chrono," which is "an institutional documentation of information about inmates and inmate behavior. [Citation.]"  (*In re Stoneroad* (2013) 215 Cal.App.4th 596, 606, fn. 4; § 3000.)

*documentation*" indicative of "actual membership," or "*association* with validated gang members or associates," and at least one of the source items must be a direct link to a current or former validated member or associate of the gang, or to an inmate/parolee or any person who is validated by the department within six months of the established or estimated date of activity identified in the evidence considered. (§ 3378, subds. (c)(3), (c)(4), italics added.)

### D. Source Items

Section 3378, subdivision (c)(8) defines thirteen specific source items which may be used to satisfy the requirement for three independent source items. The list of possible source items includes, but is not limited to, "an inmate's admission of involvement with the gang, tattoos and symbols distinctive to the gang, written material or communications evidencing gang activity, the inmate's association with validated gang affiliates, and offenses reflecting gang affiliation. [Citation.]" (*Cabrera, supra*, 55 Cal.4th at p. 689.)

Section 3378, subdivision (c)(8)'s definition of source items does not contain any time or date restrictions for the source items used in the validation process, with the exception of "[i]ndividual or group photographs with gang connotations such as those which include insignia, symbols, or validated gang affiliates…." (§ 3378, subd. (c)(8)(D).)

> "The date of a photograph shall be reasonably ascertained prior to any photo being relied upon for inclusion as a source item. *No photograph shall be considered for validation purposes that is estimated to be older than six (6) years….*" (§ 3378, subd. (c)(8)(D), italics added.)

This provision is the only regulatory definition which contains a specific six-year restriction for the type of source items used to validate an inmate as a member or an associate.

### E. Current Activity and Inactive

As we have explained, section 3378 contemplates verifying an inmate as a currently active member or associate, an inactive member or associate, or a dropout. We

have already reviewed the regulatory provisions to validate an inmate as a member or associate. We next turn to the regulatory definitions of the terms current activity and inactive. As we will explain, these definitions are linked to specific six-year date restrictions.

Section 3341.5 defines the assignment criteria to house particular inmates in the SHU, including prison gang members or associates:

> "Except as provided at section 3335(a), section 3378(d) and subsection (c)(5), *a validated prison gang member or associate* is deemed to be a severe threat to the safety of others or the security of the institution and will be placed in a SHU for an indeterminate term." (§ 3341.5, subd. (c)(2)(A)(2), italics added.)[8]

This provision thus provides for a validated member or associate of a prison gang to be placed in the SHU, without reference to whether that member or associate is currently active or inactive. Indeed, as noted by the Supreme Court, "[b]ecause gangs 'present a serious threat to the safety and security of California prisons' [citation], validation of an inmate as a gang member or associate can result in the inmate's placement in a security housing unit (SHU)." (*Cabrera*, *supra*, 55 Cal.4th at p. 685; see also *In re Sampson*, *supra*, 197 Cal.App.4th at pp. 1242-1243.)[9]

However, sections 3341.5 and 3378 require an additional step before a validated gang member or associate may be placed in a SHU, based on the following analysis.

_____

[8] The excepted provisions consist of section 3335, subdivision (a), which provides for the removal of an inmate from general population to administrative segregation. Section 3378, subdivision (d) addresses the determination of whether a validated gang member or associate in general population is inactive. Section 3378, subdivision (c)(5) defines a gang "dropout." As we will explain, inactive members or associates, and dropouts, may be transferred from the SHU to a less restrictive placement.

[9] "For purposes of placement in a SHU, active gang membership or affiliation is considered 'conduct [that] endangers the safety of others or the security of the institution' and 'a validated prison gang member or associate is deemed to be a severe threat to the safety of others or the security of the institution' warranting an indeterminate SHU term. [Citations.]" (*In re Sampson*, *supra*, 197 Cal.App.4th at pp. 1242-1243.)

Section 3378, subdivision (c)(1) contains two clauses. The first clause, which we have already discussed, requires the completion of the appropriate CDC Form 812 upon an inmate's verification as a currently active member or associate, an inactive member or associate, or a dropout. The second clause defines "current activity."

> "*Current activity* is defined as *any* documented gang activity *within the past six (6) years* consistent with section 3341.5(c)(5)." (§ 3378, subd. (c)(1), italics added.)

Turning to section 3341.5, subdivision (c)(5), it does not address validation of an inmate as a member or associate, or the type of source items required for such validation. Instead, section 3341.5, subdivision (c)(5) defines inactive status:

> "As provided in section 3378(e), the Departmental Review Board (DRB) may authorize SHU release for prison gang *members or associates categorized as inactive. The term inactive means that the inmate has not been involved in gang activity for a minimum of six (6) years….*" (§ 3341.5, subd. (c)(5), italics added.)

These definitions lead to section 3378, subdivision (e), another regulation about SHU placement:

> "An inmate housed in a security housing unit (SHU) as a gang *member or associate* may be considered for *review of inactive status* by the Department Review Board when the inmate has not been identified as having been involved in gang activity *for a minimum of six (6) years….*" (§ 3378, subd. (e), italics added.)

These provisions are consistent with the interpretation that only a validated prison gang affiliate who is currently active may be housed in the SHU. We will return to these issues in our analysis.

F.    **Dropouts and Inactive Members/Associates**

There is one more validation category for an inmate: a dropout. An inmate who is a "dropout," or an inactive member or associate, may not be subject to SHU housing.

> "Once 'validated,' an inmate's *active* membership or affiliation in the gang *and* placement in a SHU continues until one of three things happens: (1) the periodic, 180-day review of the inmate's status by the

15.

classification committee results in his or her release to the general inmate population [citation]; or (2) he or she becomes eligible 'for review of inactive [gang] status' *after six years of noninvolvement* in gang activity [citation]; or (3) he or she initiates and completes the 'debriefing process,' thereby demonstrating that he or she has dropped out of the gang. [citation]." (*In re Sampson*, *supra*, 197 Cal.App.4th at p. 1243, italics added.)

## G.    Returning an Inactive Member or Associate to SHU

Finally, there are regulatory provisions which address how a validated member or associate who has been removed from SHU for being inactive, and returned to less restrictive housing, may be reclassified and returned to SHU as an active member or associate.

Section 3378, subdivision (f) states that a gang member or associate, who has been classified as "inactive" or validated as a dropout, and who has been released from a SHU, "may be removed from the general population or any other placement *based upon one reliable source item* identifying the inmate as an *active* gang member or associate of the prison gang with which the inmate was previously validated…."  (§ 3378, subd. (f), italics added.)  The source item must be based on information developed after the inmate's release from SHU.  (*Ibid*.)

Section 3341.5, subdivision (c)(6) is a related provision and states:

> "As provided at section 3378(f), an inmate categorized or validated as a dropout of a prison gang and placed in the general population may be returned to segregation based upon *one reliable source item* identifying the inmate as *a currently active gang member or associate* of the prison gang with which the inmate was previously validated…." (Italics added.)

Section 3341.5, subdivision (c)(6) further provides:

> "Current activity is defined as, *any documented gang activity* within the past six (6) years…." (Italics added.)

Taken together, these regulations require one reliable source item to identify a previously validated member or associate as currently active, and return him to SHU.  It is noteworthy that these provisions specify that only one source item is required to

16.

reclassify the inmate from inactive to active, and current activity is again defined as *any* documented gang activity within the past six years.

## H. Analysis

Petitioner asserts that all three source items required to validate an inmate as a prison gang affiliate must satisfy the definition of current activity, and he was improperly validated and housed in the SHU since one of the three source items was more than six years old. Respondent takes the opposite position, and argues that in order to validate an inmate as a gang member or associate, there are no date restrictions on the three requisite source items (except for the specific limitation on the date of a photograph); and an inmate may be further classified as a currently active member or associate for purposes of SHU housing if just one of the three source items shows gang activity in the past six years, since the regulations define current activity as *any* gang activity in the past six years.

We find respondent's interpretation of the relevant regulatory provisions is supported by the "plain language" of sections 3378 and 3341.5, and is not "clearly unreasonable." (*Cabrera*, *supra*, 55 Cal.4th at pp. 601-602.) An inmate may be verified as a currently active prison gang member or associate, or an inactive member or associate. (§ 3378, subd. (c)(1).) An inmate may be validated as a member or an associate based upon three independent source items, one of which must be a "direct link." (§ 3378, subds. (c)(3) & (c)(4).) The regulatory definitions of the possible source items to validate an inmate do not include any type of date restrictions, except for the six-year limitation on photographs. (§ 3378, subd. (c)(8).)

However, the regulations also contemplate a further step in the process: the determination of whether a member or an associate is currently active or inactive, which is the key decision for housing the affiliate in the SHU. (§ 3378, subd. (c)(1).) The specific regulations on these points demonstrate that CDCR's decision to house a gang member or associate in the SHU is dependent on whether the member or associate is

currently active or inactive. (*Ibid.*; § 3341.5, subd. (c)(5).) The regulations clearly provide that an inmate who may have been validated as a prison gang affiliate, but who is inactive based on the date limitations for current activity and inactivity, may not be housed in the SHU.

We also find that only one of the three source items must satisfy the definition of current activity, based on the plain language defining the phrase as *any* documented gang activity within the past six years. (§ 3378, subd. (c)(1).) Since three source items are required to validate an inmate as a member or an associate, and *any* documented gang activity in the past six years classifies that inmate as currently active, then only one of the three source items has to satisfy the definition of "current activity" in order to classify an inmate as a currently active member or associate – "any" refers to the *quantity* of source items, and means that only one source item must show the inmate's gang activity within the past six years. (*Ibid.*)

This interpretation is further supported by the regulatory provisions that a gang affiliate who has been housed in the SHU may be transferred to less restrictive housing if classified as inactive, i.e., "the inmate has not been involved in gang activity for a minimum of six (6) years…." (§ 3341.5, subd. (c)(5); § 3378, subd. (e).)

The six-year requirement is thus clearly linked to CDCR's ability to classify a validated member or associate as currently active and house him in the SHU, and the definition of current activity – *any* gang activity within the past six years – is consistent with the interpretation that only one of the three source items must show the inmate's gang activity in the past six years.

### *Petitioner's Arguments*

Petitioner contends the same regulations require that all three source items satisfy the definition of current activity, and that he was improperly validated as a currently active associate since one of the three source items was more than six years old.

18.

Petitioner argues respondent's position is inconsistent with section 3341.5, subdivision (c)(2)(A)(2), which states:

> "[A] *validated* prison gang member or associate is deemed to be a severe threat to the safety of others or the security of the institution and *will be placed in a SHU for an indeterminate term.*" (*Ibid.*, italics added.)

This provision gives CDCR authority to house an inmate in SHU based on his *validation* as a member or associate; it is silent on whether the inmate is a *currently active* member or associate. However, section 3345.1, subdivision (c)(2)(A)(2) cannot be read in isolation. The entirety of the regulations further state that a validated member or associate can be transferred from the SHU if he is inactive, i.e., he has not been involved in gang activity for a minimum of six years. (§ 3341.5, subd. (c)(5).) Thus, the regulatory scheme contemplates that a validated member or associate will be placed in the SHU for an indeterminate term if the inmate is a currently active affiliate – i.e., there is evidence of *any* gang activity within the past six years. (*Ibid.*; § 3378, subds. (c)(1), (e).) A validated affiliate who satisfies the regulatory definition for being inactive cannot be placed in the SHU under the plain language of these provisions.

Petitioner points to another regulatory provision in support of his position. Section 3378, subdivision (c)(2) states:

> "Information entered onto the CDC Form 812-A or B shall be reviewed and verified by a gang investigator to ensure that the identification of an inmate/parolee as *a currently active gang member or associate is supported by at least three independent source items* in the inmate/parolee's central file…." (Italics added.)

It would seem that this regulation could be interpreted to require that all three source items must satisfy the definition of current activity, i.e., "any documented gang activity *within the past six (6) years …*" (§ 3378, subd. (c)(1), italics added.) Such an interpretation, however, clashes with the specific provisions regarding the three independent source items, which do not carry any time limitations except for

19.

photographs, and the specific definition of current activity as *any* gang activity within the past six years.

As a principle of construction, it is well-established that if two provisions cannot be reconciled, then a specific provision prevails over a general one relating to the same subject. (*County of Santa Clara v. Deputy Sheriffs' Assn.* (1992) 3 Cal.4th 873, 883; *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 477-478; *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd*. (1999) 71 Cal.App.4th 1518, 1524.) The above-quoted portion of section 3378, subdivision (c)(2) is a general provision regarding filing and documentation, and does not trump the specific regulations which define the independent source items and the phrase "current activity." Such a conclusion is further supported by section 3378, subdivision (a), which defines the type of information to be entered on the various versions of CDC Form 812, providing: "Entries on these forms shall not be a substitute for detailed documentation required elsewhere in the central file." (*Ibid.*)

I. **Conclusion**

The regulatory structure for validating an inmate as a prison gang member or associate does not contain any time restrictions for the three requisite source items, with the exception of photographs. However, the regulatory provisions clearly contemplate that only currently active gang affiliates are subject to placement in SHU for an indeterminate term. In addition, current activity is clearly defined as *any* documented gang activity within the past six years, denoting that the quantum of proof required to classify a validated affiliate as currently active is one source item. (§ 3378, subd. (c)(1).) If an inmate is validated as a member or associate, but none of the three source items satisfy the definition of "current activity," the regulations contemplate classifying that inmate as "inactive" and thus ineligible for placement in the SHU.

In the course of briefing in this case, both petitioner and respondent have generally referred to certain practices and procedures employed by CDCR during the validation and

20.

classification process.  Most of these references have not been supported by any documentary exhibits.  While CDCR may deviate or vary on how it carries out these regulations, we have interpreted the regulatory structure as it currently exists in title 15 of the California Code of Regulations.

## DISPOSITION

The petition for writ of habeas corpus is denied.  Petitioner's motion to depose J. Beeson is denied.  Petitioner's motion to strike respondent's letter brief of September 27, 2013, is denied.

_____
Poochigian, J.

WE CONCUR:

_____
Gomes, Acting P.J.

_____
Detjen, J.

21.

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re MANUEL ALVAREZ,<br><br>   On Habeas Corpus. | F063995<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING, CERTIFYING OPINION FOR PUBLICATION**<br><br>**[No Change in Judgment]** |

**THE COURT:**

It is ordered that the opinion filed herein on December 10, 2013, be modified as follows:

At the top of page 18 of the Slip Opinion, the following sentence is deleted: "The regulations clearly provide that an inmate who may have been validated as a prison gang affiliate, but who is inactive based on the date limitations for current activity and inactivity, may not be housed in the SHU," and replaced in its entirety as follows:

The regulations provide that an inmate who may have been validated as a prison gang affiliate, but who is currently inactive, may not be housed in the SHU on the basis of inactive status under the classification statutes but may be so housed under other provisions relating to circumstances, for example, in which the inmate poses a threat to other inmates or institutional security.

There is no change in the judgment.

Respondent's petition for rehearing is denied.

The opinion in the above-entitled matter filed on December 10, 2013, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.


_____
Poochigian, J.

WE CONCUR:


_____
Gomes, Acting P.J.


_____
Detjen, J.

2